TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00499-CV







Beacon National Insurance Company; First Preferred Insurance Company; and

Petrolia Insurance Company, Appellants


v.



Jose Montemayor, in his Official Capacity as Commissioner of Insurance; the Texas


Department of Insurance; John Cornyn, in his Official Capacity as Attorney


General; and the Office of the Attorney General, Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 261ST JUDICIAL DISTRICT


NO. GN101576, HONORABLE WILLIAM E. BENDER, JUDGE PRESIDING






 Appellants Beacon National Insurance Company, First Preferred Insurance Company,
and Petrolia Insurance Company (collectively "Beacon") appeal the district court's order granting
the Texas Department of Insurance's ("TDI") plea to the jurisdiction and dismissing the cause. (1) 
Beacon contends the district court erred because (1) Beacon is entitled to pursue declaratory relief
to construe a contract; (2) its action presents a justiciable controversy with TDI and is not barred by
sovereign immunity; (3) Beacon is not required to exhaust its administrative remedies before seeking
this declaratory relief on a purely legal question; and (4) primary jurisdiction does not bar Beacon's
request for declaratory relief. We will affirm the judgment of the district court.

BACKGROUND

 This controversy stems from Beacon's treatment of its insureds' claims for roof
repairs. When replacing a roof, some homeowners elect to lay new shingles over the damaged layer
of shingles rather than pay the cost of having the old layer removed. Repeating this practice over
time can result in the loss of a "nailable surface," i.e., a surface to which a new roof may adequately
be affixed. Subsequent roof repairs eventually require removing the underlying layers in order to
obtain a nailable surface.

 The crux of this controversy concerns the Texas Standard Homeowers Insurance
Policy--Form B ("Form B"), a standard insurance policy form promulgated by TDI, the terms of
which are incorporated into the insurance policy contracts between Beacon and its policy holders. 
Form B provides, "If a Peril Insured Against causes the loss, we will pay the reasonable cost you
incur for necessary repairs." Form B requires an insurer to pay its insured "the cost to repair or
replace that part of the building structure(s) damaged, with material of like kind and quality and for
the same use and occupancy on the same premises; or the amount actually and necessarily spent to
repair or replace the damaged building structure(s)." (2) Form B excludes from coverage "loss caused
by wear and tear, deterioration or loss caused by any quality in property that causes it to damage or
destroy itself."

 Beacon acknowledges that Form B requires it to pay for roof damage caused by
covered perils, such as hail. However, Beacon contends that Form B does not require it to pay for
repairs or replacement of roofing layers damaged by excluded perils, such as wear and tear. Thus,
as Beacon concludes in a memo to its agents dated January 27, 2000, "on those claims requiring
replacement of damaged roofs, our company will only figure to tear off one layer of roofing and
replace it with like kind and quality."

 Beacon asserts that TDI expressly approved Beacon's interpretation of Form B in a
letter to Beacon dated February 15, 2000. (3) However, Beacon complains that TDI reversed its
position in a letter to Beacon dated October 5, 2000, informing Beacon that regardless of whether
underlying roof layers were damaged by excluded perils, Beacon was responsible for providing a
nailable surface for a new roof covering:


One such situation [not addressed in the February 15, 2000 letter] exists if during the
removal of the damaged roof covering it is discovered the underlayment (shingles or
decking) is an unsuitable nailing surface for the new roof covering . . . . To attach
the new roof covering, there must be a nailable surface; therefore, it may be necessary
to either (i) replace wood shingles/shakes with new wood shingles/shakes, or (ii)
remove the wood shingles/shakes and redeck the affected area before installing the
new roof covering.



A generous reading of these letters suggests that TDI agreed with Beacon's assertion that it was not
responsible for replacing underlying layers of roofing when those underlying layers were damaged
by excluded perils. However, that statement, and TDI's acquiescence to it, does not address
situations where the cause of damage to the underlying layers of roofing is unknown, or where there
are so many underlying damaged layers (some caused by excluded perils, some by covered perils)
that a nailable surface cannot be obtained without removing the underlying layers.

 Beacon claims that TDI "announced its intention" to: (1) fine Beacon a total of
$12,000; (2) require Beacon to review its policy files to locate specific claims in which Beacon
refused to pay for tear off necessary to obtain a "nailable surface"; and (3) require Beacon to pay past
roof repair claims in accordance with the October 5, 2000 letter. Beacon expresses concern that TDI
will institute an administrative enforcement action against it. On May 23, 2001, Beacon filed suit
against TDI, seeking declaratory relief that


(1) [i]n light of both the "like kind and quality" language in the settlement portion of
Form B and the specific exclusions listed in the policy, [Beacon is] not obligated to
repair or replace portions of a multi-layer roof that are damaged as a result of an
excluded peril; (2) TDI may not periodically interpret an insurance contract in a
manner that is contrary to the plain terms of the contract and that in doing so it is
exceeding its statutory authority; (3) TDI cannot retroactively impose a new
interpretation of a policy form in order to punish an insurer who took actions
consistent with the agency's previous interpretation; and (4) Beacon's treatment of
roof repair claims consistent with the terms of Form B and the agency's interpretation
of such form cannot constitute "bad faith" claims settlement practices as a matter of
law . . . .



 Beacon founded its request for declaratory relief on the Uniform Declaratory
Judgments Act ("the UDJA"). See Tex. Civ. Prac. & Rem. Code Ann. § 37.003 (West 1997). It
characterizes its suit as an effort to obtain a court declaration of purely legal questions regarding its
contract rights and obligations under Form B with respect to claims settlement with its policy
holders. See Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997). In response, TDI filed a plea
to the jurisdiction based on, among other things, sovereign immunity, Beacon's failure to exhaust
its administrative remedies, and the primary jurisdiction of TDI over the issues presented. The
district court granted TDI's plea to the jurisdiction without specifying the grounds, and Beacon
appeals.


STANDARD OF REVIEW

 A plea to the jurisdiction challenges the district court's authority to determine the
subject matter of the cause of action. Bland Indep. Sch. Dist. v. Blue, 34 S.W.3d 547, 554 (Tex.
2000). Subject matter jurisdiction raises a question of law, which we review de novo. See Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998). The plaintiff bears the burden of pleading
facts that show the district court has subject matter jurisdiction. Texas Ass'n of Bus. v. Texas Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). We examine a plaintiff's good faith factual
allegations to determine whether the district court has jurisdiction. See Bland Indep. Sch. Dist., 34
S.W.3d at 554.

 Unless the face of the petition affirmatively demonstrates a lack of jurisdiction, the
district court must liberally construe the allegations in the petition in favor of the plaintiff and in
favor of jurisdiction. Texas Ass'n of Bus., 852 S.W.2d at 446; Peek v. Equipment Serv. Co., 779
S.W.2d 802, 804 (Tex. 1989). Nevertheless, the plaintiff's pleadings should be alleged sufficiently
to give a reasonable person fair notice of the basis for jurisdiction.


DISCUSSIONInitial Determination

 Beacon's pleadings do not clearly allege whether it is seeking an initial determination
of legal issues or appealing an action taken by TDI. Although Beacon couches its complaints in
terms of seeking construction of contractual language, the facts and allegations reflect that Beacon's
main complaint concerns TDI's recent statement as to the coverage afforded by Form B and
Beacon's perceived threat of enforcement action being taken by TDI. Beacon states that its
declaratory judgment action sought to clarify its rights under Form B and to complain of TDI's
improper construction of the form. Beacon asserts that TDI exceeds its statutory authority because
its construction is wrong. Beacon contends that TDI changed its position about what the terms of
Form B required, "announced its intention" to fine Beacon, tendered Beacon a proposed consent
order, and suggests that unless Beacon agrees TDI might institute an enforcement action. Beacon
asserts in its brief that it "seeks relief from TDI's proposed enforcement action."

 State agencies have immunity from suit under the doctrine of sovereign immunity. 
Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405 (Tex. 1997). The UDJA waives this immunity
when a party seeks a court's construction of a statute or rule. City of LaPorte v. Barfield, 898
S.W.2d 288, 297 (Tex. 1995). Beacon's action does not seek construction of a statute or rule; it
seeks a court ruling as to its obligations under Form B, which is part of its insurance contracts with
its policy holders to which TDI is not a party. We hold that the district court properly sustained
TDI's plea to the jurisdiction.

 Beacon argues that because courts are empowered to construe insurance policies
through declaratory judgment actions and the UDJA waives the State's sovereign immunity against
such a suit, (4) the courts are therefore empowered to remedy Beacon's complaints about TDI's current
position as to the terms of coverage provided in Form B. We disagree.

 A declaratory judgment action under the UDJA is available if (1) a justiciable
controversy exists and (2) the controversy can be resolved by court declaration. Bonham State Bank
v. Beadle, 907 S.W.2d 465, 467 (Tex. 1995). However, the UDJA does not establish subject matter
jurisdiction. A declaratory judgment action is merely a procedural device for deciding matters
already within a court's subject matter jurisdiction. State v. Morales, 869 S.W.2d 941, 947 (Tex.
1994); Texas Ass'n of Bus., 852 S.W.2d at 444. The UDJA does not itself confer jurisdiction or
substantive rights, and it cannot change the basic character of a lawsuit. Vance v. Doe, 969 S.W.2d
537, 540 (Tex. App.--Dallas 1998, no pet.); Kadish v. Pennington Assocs., 948 S.W.2d 301, 304
(Tex. App.--Houston [1st Dist.] 1995, no writ). Beacon must allege an independent basis for
jurisdiction to maintain this proceeding.

 The power of courts to issue declaratory judgments under the UDJA in the face of
administrative proceedings is limited. For example, we have held that when a statute provides an
avenue for attacking an agency order, a declaratory judgment action will not lie to provide redundant
remedies. Young Chevrolet, Inc. v. Texas Motor Vehicle Bd., 974 S.W.2d 906, 911 (Tex.
App.--Austin 1998, pet. denied). An administrative body is entitled to exercise its statutory duties
and functions without interference from the courts, unless it exceeds that statutory authority.
Westheimer Indep. Sch. Dist. v. Brockette, 567 S.W.2d 780, 785 (Tex. 1978). A party may employ
a declaratory judgment action to intervene in administrative proceedings only when an agency is
exercising authority beyond its statutorily conferred powers. Nuchia v. Woodruff, 956 S.W.2d 612,
615-16 (Tex. App.--Houston [14th Dist.] 1997, pet. denied).

 Although Beacon's petition alleges that TDI has exceeded its statutory authority, the
basis alleged for that complaint is not sufficient to confer jurisdiction. Beacon asserts that while TDI
has authority to promulgate Form B, it does not have authority to construe its provisions. But see
Tex. Ins. Code Ann. art. 5.35 (West Supp. 2002). Beacon contends that TDI misconstrues the terms
of coverage provided in Form B and, therefore, TDI has exercised authority beyond that conferred
on it by the legislature. Whether TDI's interpretation is correct or incorrect cannot be the factor that
confers jurisdiction. TDI is expressly authorized by the Insurance Code to regulate insurance
policies and insurer claims practices. (5) It therefore has the authority to decide such matters in the first
instance. 

 Furthermore, Beacon has not demonstrated the requirements necessary to seek
contract construction. (6) It does not seek resolution of a dispute between contracting parties. Beacon
is not a party to any contract with TDI. Beacon does not seek a declaration of contracting parties'
rights under any specific contract. (7) It is axiomatic that a contractual dispute must rest upon a
contract, or at least an allegation of a contract. Here, there is none. Rather, Beacon's claims concern
abstract insurance contracts and hypothetical sets of facts. Beacon's preemptive claims for
contractual construction reflect an effort to avoid regulatory enforcement. See, e.g., Texas Med.
Ass'n v. Aetna Life Ins. Co., 80 F.3d 153, 159 (5th Cir. 1996) (under Texas law plaintiffs lacked
standing under Insurance Code to bring claims, and allegations seeking contract construction could
not provide jurisdiction).

 Beacon's premature attempt to arrest the administrative process before the agency has
taken adverse action against it distinguishes this case from the facts of a recent decision in which we
held that a party had properly presented a request for declaratory relief. See City of Waco v. Texas
Natural Res. Conservation Comm'n, No. 03-01-00217-CV, 2002 Tex. App. LEXIS (Austin May 9,
2002, no pet. h.). In that case, the City sought a declaration of the effect of a federal regulation
incorporated into state law, a pure question of law. Id., slip op. at 10, 2002 Tex. App. LEXIS at *17. 
Resolution of the City's claims did not require the determination of facts in the context of an
individual permit. Id., slip op. at 10-11, *16-18. We held that the City's claim properly implicated
the purpose of the UDJA. Id., slip op. at 13, *21. Beacon's claims require determination of several
factual matters which have not been sufficiently developed. Additionally, while Beacon has only
pointed to TDI's "intentions," the City was able to point to actions that the TNRCC had taken, i.e.,
granting permits that allowed for the additional discharge of wastewater into an impaired segment
of water. Moreover, this action by the TNRCC indicated that the TNRCC had been given the
opportunity to exercise primary jurisdiction in the matter; in contrast, TDI's expressed intentions do
not manifest that agency's exercise of a matter within its statutorily conferred province.

 In addition, Beacon's suit lacks necessary parties. Section 37.006(a) of the UDJA
requires all with an interest who would be affected by a declaration be made parties to any
declaratory judgment action. See Tex. Civ. Prac. & Rem. Code Ann. § 37.006(a) (West 1997). 
Beacon's insureds who have been or will be denied coverage for roof tear-off expenses have a
cognizable interest in this declaratory judgment action. Beacon has not joined or even identified any
such insureds. Section 37.006(a) prohibits the application of any declaration to anyone not a party
to the declaratory judgment action. See id. If a declaration in this case could not have a preclusive
effect, then the suit cannot terminate a controversy or resolve uncertainties. Section 37.008 allows
a court to refuse to hear a declaratory judgment action if it would not end the controversy or
uncertainty. Id. § 37.008 (West 1997). The district court properly refused to hear this claim.


Judicial Review of TDI Actions

 Section 2001.038 of the Administrative Procedure Act ("APA") allows a person to
bring a declaratory judgment action to determine the "validity or applicability of a rule . . . if it is
alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere
with or impair, a legal right or privilege of the plaintiff." Tex. Gov't Code Ann. § 2001.038 (West
2000). This provision cannot provide jurisdiction because Beacon does not allege any basis for a
declaratory judgment under section 2001.038. Beacon does not challenge the "validity or
applicability" of an agency rule, finding, or order. Beacon complains only about a series of letters
between Beacon and TDI and a proposed consent decree submitted to Beacon by TDI. Neither the
correspondence nor the proposed consent decree equate to a specific agency rule, set of requirements,
or specific policy concerning roof tear-offs or the terms of coverage under Form B.

 Section 2001.038 requires that the agency action being challenged be a "rule" as
defined in the APA. Nothing in Beacon's complaints qualifies as an attack on an agency "rule" as
the statute defines that term. See id. § 2001.003(6). Here, the correspondence from TDI about which
Beacon complains is directed at Beacon only; TDI's comments are not statements of general
applicability.

 TDI's general policy regarding roof tear-offs is apparently set forth in agency bulletins
or advisory letters which are not included in this record. Beacon has not sought a declaratory
judgment concerning the "validity and application" of these bulletins or letters. Beacon's complaints
are directed at TDI's correspondence with Beacon, not generally applicable policies. Even if we
assume that Beacon complains or could complain about the policies contained in TDI's bulletins or
advisory letters, these bulletins or advisory letters do not rise to the status of "rules" within the
meaning of section 2001.003(6). Brinkley v. Texas Lottery Comm'n, 986 S.W.2d 764, 769 (Tex.
App.--Austin 1999, no pet.). This Court has previously held:


Not every statement by an administrative agency is a rule for which the APA
prescribes procedures for adoption and for judicial review. Texas Educ. Agency v.
Leeper, 893 S.W.2d 432, 443 (Tex. 1994). This observation refers to the fact that
administrative agencies routinely issue letters, guidelines, and reports, and
occasionally file briefs in court proceedings, any of which might contain statements
that intrinsically implement, interpret, or prescribe law, policy, or procedure or
practice requirements. Are all such statements therefore "rules" within the meaning
of APA section 2001.003(6) and 2001.038? They are not for several reasons.


* * * *


The legislature intends that administrative agencies exercise effectively the powers
delegated to them. . . . Agencies would be reduced to impotence, however, if bound
to express their views as to "law," "policy," and procedural "requirements" through
contested-case decisions or formal rules exclusively; and they could not under such
a theory exercise powers explicitly delegated to them by the legislature. 



Id. at 769-71.

 Beacon did not allege that any "rule" within the meaning of section 2001.003(6) is
invalid or inapplicable. It did not allege the threatened deprivation of a specific property right or
privilege. Therefore, section 2001.038 provides no basis for the district court's jurisdiction over
Beacon's declaratory judgment action.


Judicial Review Under the Insurance Code

 Beacon complains about TDI's actions or anticipated actions in three general areas:
(1) regulation of insurance policy forms, see Tex. Ins. Code Ann. arts. 5.39, 5.96 (West 1981); (2)
regulation of insurer unfair and deceptive acts or practices, see Tex. Ins. Code Ann. art. 21.21 (West
1981 & Supp. 2002); and (3) regulation of insurer claims settlement practices, see Tex. Ins. Code
Ann. art. 21.21-2 (West 1981 & Supp. 2002). (8) The statutory framework for judicial review of TDI's
actions differs among these code provisions. (9) The code explicitly excludes matters arising under
articles 5.39 and 5.96 (regarding the promulgation and approval of policy forms by TDI) from the
definition of a "contested case" under the APA. These provisions contain their own specialized
procedures which do not provide for judicial review of TDI's acts. (10) On the other hand, TDI's
regulation under articles 21.21 and 21.21-2 are subject to the contested case provisions of the APA
and substantial evidence review. (11)

 The portions of the Insurance Code providing for TDI's regulation of the pertinent
types of insurance policies do not expressly allow for judicial review. The Texas Supreme Court
recently reiterated the basic rule that "there is no right to judicial review of an administrative order
unless a statute provides a right or unless the order adversely affects a vested property right or
otherwise violates a constitutional right." Continental Cas. Co. v. Functional Restoration Assocs.,
19 S.W.3d 393, 397 (Tex. 2000); see also General Servs. Comm'n v. Little-Tex Insulation Co., 39
S.W.3d 591, 599 (Tex. 2001); Stone v. Texas Liquor Control Bd., 417 S.W.2d 385, 385-86 (Tex.
1967). The legislature did not provide for judicial review from decisions made under article 5.39
in connection with prescription, promulgation, adoption, approval, amendment, or repeal of standard
manual rules or policies and endorsement forms for fire and other allied insurance lines. To the
extent that Beacon complains of TDI's actions related to its duties under article 5.96, there is no
jurisdictional basis for judicial review of those actions, and article 5.96(k) expressly exempts the
article from application of the APA.

 Neither article 21.21 nor article 21.21-2 provides any basis for jurisdiction over
Beacon's claims. The private cause of action created in article 21.21, section 16 was fashioned by
the legislature to be used against insurers. Nothing in article 21.21, section 16 provides an insurer
a right of action against TDI. Similarly, article 21.21, section 16 applies only to persons in privity
of contract with an insurer or an intended beneficiary of a policy. Shelton Ins. Agency v. St. Paul
Mercury Ins. Co., 848 S.W.2d 739, 744 (Tex. App.--Corpus Christi 1993, writ denied); CNA Ins.
Co. v. Scheffey, 828 S.W.2d 785, 791 (Tex. App.--Texarkana 1992, writ denied); Chaffin v.
Transamerica Ins. Co., 731 S.W.2d 728, 731 (Tex. App.--Houston [14th Dist.] 1987, writ ref'd
n.r.e.). Moreover, article 21.21-2 is not available to Beacon because only TDI may act under it to
investigate insurers and impose sanctions. See Allstate Ins. Co. v. Watson, 876 S.W.2d 145, 148-49
(Tex. 1994).

 Furthermore, there is no judicial review of TDI's actions because TDI has not taken
any action against Beacon. We have nothing to review. TDI has only engaged in informal
disposition procedures prescribed by the Insurance Code. See Tex. Ins. Code Ann. § 82.055(a)
(West 2002). As judicial review under articles 21.21 and 21.21-2 is subject to the APA, anyone
aggrieved by TDI's actions must first exhaust all administrative remedies before proceeding to court. 
Texas Educ. Agency v. Cypress-Fairbanks Indep. Sch. Dist., 830 S.W.2d 88, 90 (Tex. 1992). Section
2001.171 of the APA only allows judicial review to a person "who has exhausted all administrative
remedies available within a state agency" and who is dissatisfied with a "final order in a contested
case." Tex. Gov't Code Ann. § 2001.171 (West 2000). Failure to exhaust administrative remedies
precludes granting declaratory relief before the agency issues a final administrative decision.
Cypress-Fairbanks Indep. Sch. Dist., 830 S.W.2d at 90. Here, there is no order, final or otherwise. 

 Clearly, TDI was acting pursuant to the authority granted to it under section 82.055(a)
when it submitted the proposed consent decree about which Beacon complaints. Beacon argues that
it anticipates that TDI will initiate enforcement proceedings if Beacon does not agree to the terms
set out in the proposed consent decree. TDI has not initiated any enforcement proceedings. 
Beacon's lawsuit presents an attempt to circumvent TDI's ability to act under chapters 82 and 84 of
the Insurance Code. See Tex. Ins. Code Ann. §§ 82.051, .052, .054, .055 (West 2002). Beacon
essentially seeks an advisory opinion which the courts are powerless to render. See Texas Ass'n of
Bus., 852 S.W.2d at 444 (citing Tex. Const. art. II, § 1, prohibiting advisory opinions).

 The exception to the finality requirement for matters involving purely legal issues
does not apply to this case as Beacon urges. The substance of Beacon's complaints involves factual
issues, not purely legal questions, and requires technical expertise that should not be determined in
a factual vacuum. Each insured's roof claim is factually unique and may arise under innumerable
factual scenarios. Whether and under what circumstances an adequate roof can be installed without
removing underlying layers is a fact-based question. Beacon seeks a blanket answer based only on
policy language and not individualized facts. See, e.g., Mercedes Indep. Sch. Dist. v. Munoz, 941
S.W.2d 215, 218 (Tex. App.--Corpus Christi 1996, writ denied) (existence of fact questions
disqualified claim from pure legal question exception). Beacon is not excused from the exhaustion
of remedies requirements of the APA.


Primary Jurisdiction

 The doctrine of primary jurisdiction applies when a court and an agency have
concurrent original jurisdiction over a dispute. Cash Am. Int'l, Inc. v. Bennett, 35 S.W.3d 12, 18
(Tex. 2000). It guides a court in determining whether it should route the threshold decision about
certain issues that are "within the special competence of an administrative agency" to that agency. 
Id. A court must decide whether it should defer to the agency's expertise and responsibility to
develop regulatory policy. Id. The doctrine rests on valid policies: "(1) an agency is typically staffed
with experts trained in handling the complex problems in the agency's purview; and (2) great benefit
is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts
and juries may reach different results under similar fact situations." Subaru of Am., Inc. v. David
McDavid Nissan, Inc., No. 00-0292, 45 Tex. Sup. Ct. J. 907, 2002 Tex. LEXIS 96 at *14 (Tex. June
27, 2002); see also Gregg v. Delhi-Taylor Oil Corp., 344 S.W.2d 411, 413 (Tex. 1961). This
deference ensures that the agency decides, at least initially, (12) matters that require the "special
knowledge, experience and services of the administrative tribunal to determine technical and
intricate matters of fact." Cash Am. Int'l, Inc., 35 S.W.3d at 18. Courts also defer to an agency
when uniform decision making is essential to carry out the purposes of the regulatory scheme. Id.;
Kavanaugh v. Underwriters Life Ins. Co., 231 S.W.2d 753, 755 (Tex. Civ. App.--Waco 1950, writ
ref'd); see also Tex. Ins. Code Ann. § 36.001(b) (West 2002).

 Both of the fundamental principles underlying the doctrine of primary jurisdiction
lead to the conclusion that the courts should defer to TDI, subject to appropriate judicial review, on
the issues presented in this case. While courts alone are authorized to construe written contracts and 
adjudicate rights thereunder, this case involves many more complex issues than simple contract
interpretation. TDI's enforcement of insurer claims handling practices is necessarily informed by 
court interpretations of policy language. However, the issues raised by Beacon's complaints
implicate other questions concerning such matters as structural engineering, residential construction, 
and premium rating. TDI can better address, at least initially, these fact-based questions and apply
its regulatory expertise and historical perspective to these issues.

 Moreover, principles of uniformity dictate that TDI address these issues. In matters
of insurance and interpretation of insurance policies, the supreme court has recognized the
importance of uniformity, especially when policy provisions are identical across the country. 
National Union Fire Ins. Co. v. CBI Indus., 907 S.W.2d 517, 522 (Tex. 1995). Form B is a
standardized form used in the insurance industry nationwide. Resolution of the issues raised by
Beacon potentially impact all insurers writing homeowner coverage in Texas. The issues should first
be addressed in a broader administrative proceeding, not in two party litigation. The regulatory
scheme and authority of TDI will be undermined if insurers are allowed to avoid enforcement
proceedings through preemptive declaratory judgment actions.


CONCLUSION


 For the reasons set forth above, we overrule Beacon's issues on appeal. We affirm
the judgment of the district court granting TDI's plea to the jurisdiction and dismissing Beacon's
action.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: July 26, 2002

Publish

1. Beacon conceded at oral argument that it has no justiciable claims against John Cornyn as
Attorney General or the Office of Attorney General.
2. Form B also provides, under a section labeled "Extensions of Coverage," the following:
"We will pay your expense for the removal from the residence premises of: (a) debris of covered
property if a Peril Insured Against causes the loss." 
3. This February15 letter is apparently a response to an earlier letter from Beacon which is
not in the record. The February 15 letter enclosed a copy of an "April 24, 1995 letter by [TDI] which
clarified this Department's position regarding claims on dwellings having multiple layers of roof
coverings." It then states that "[i]t appears that [Beacon's January 27, 2000 letter to adjusters]
regarding roof claim loss settlement is within the provisions as contained in the policy contract." 
This is the portion of TDI's letter relied on by Beacon to support its claim that TDI at one time
approved of its settlement practices regarding roof claims. The February 15 letter goes on to state,
"However, there may be situations, i.e. [sic] wind and/or hail damages both layers, that the company
would be expected to pay for complete removal of the top and underlying roofing material." 
4. See Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997).
5. Tex. Ins. Code Ann. art. 5.35(a)-(j) (West Supp. 2002); Tex. Ins. Code Ann. art. 21.21, § 5,
21.21-2, §§ 4, 8 (West 1981); Tex. Ins. Code Ann. §§ 31.002(1), 37.001 (West 2002) (investing TDI
with authority to "regulate the business of insurance in this state").
6. Subject matter jurisdiction requires that the plaintiff bringing the suit have standing to do
so, that there be a live controversy between the parties, and that the case be justiciable or ripe for
decision. Texas Ass'n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 443-46 (Tex. 1993); Texas
Dep't of Banking v. Mount Olivet Cemetery Ass'n, 27 S.W.3d 276, 282 (Tex. App.--Austin 2000,
pet. denied) (suits to construe statutes).
7. All of the insurance policy construction cases cited by Beacon in its brief involve situations
concerning an insurance policy between an insurer and an insured. See Travelers Indem. Co. v.
McKillip, 469 S.W.2d 160 (Tex. 1971); Carlton v. Trinity Universal Ins. Co., 32 S.W.3d 454 (Tex.
App.--Houston [14th Dist.] 2000, pet. denied); Wallis v. United Servs. Auto Ass'n, 2 S.W.3d 300
(Tex. App.--San Antonio 1999, pet. denied).
8. The proposed consent decree submitted by TDI includes provisions for Beacon's violations
of policyholder complaint record keeping. An insurer's failure to keep required records of the
complaints it receives about its claims practices is governed by article 21.21-2, section 2(6). Tex.
Ins. Code Ann., art. 21.21-2, § 2(b) (West Supp. 2002). These failures are defined as "unfair claims
settlement practices."
9. The Insurance Code is not a model of clarity. Adding to the confusion is the fact that the
Code is being recodified in intervals and portions of the recodification contain substantive revisions. 
Currently, some parts of the Code have been recodified and some have not.
10. Tex. Ins. Code Ann. arts. 5.39(a), 5.96(a), (b), (f), (j), (k) (West Supp. 2002).
11. Tex. Ins. Code Ann. §§ 31.002, .001, .101, .201-03 (West 2002). 
12. Appellate courts review questions of primary jurisdiction on a de novo basis with no
deference to the district court's decision. Subaru of Am., Inc. v. David McDavid Nissan, Inc., No.
00-0292, 45 Tex. Sup. Ct. J. 907, 2002 Tex. LEXIS 96 at *18 (Tex. June 27, 2002).