



# MEMORANDUM OPINION

No. 04-09-00502-CV

**REAL-EDWARDS CONSERVATION AND RECLAMATION DISTRICT**,
Appellant

v.

**SAVE THE FRIO FOUNDATION, INC.**,
Appellee

From the 38th Judicial District Court, Real County, Texas
Trial Court No. 2008-2813
Honorable Mickey R. Pennington, Judge Presiding

Opinion by:   Catherine Stone, Chief Justice

Sitting:   Catherine Stone, Chief Justice
Karen Angelini, Justice
Steven C. Hilbig, Justice

Delivered and Filed: February 17, 2010

REVERSED AND REMANDED

Real-Edwards Conservation and Reclamation District appeals the trial court's order denying its plea to the jurisdiction. The District contends the trial court lacked jurisdiction because: (1) Save the Frio Foundation, Inc. could not circumvent the required exhaustion of administrative remedies by pursuing relief under the Uniform Declaratory Judgment Act ("UDJA"); and (2) the Foundation's petition does not state a justiciable controversy. We reverse the trial court's order and remand the

cause to the trial court with instructions to dismiss the Foundation's claims and to consider the District's request for attorney's fees.

## BACKGROUND

In January of 2007, Leo Pavlas filed an application with the District for a permit to withdraw groundwater from a well. Pavlas intended to use the groundwater for commercial bottling. The Foundation opposed the permit, asserting that the water pumped from the well would be state or surface water as opposed to groundwater. Testing was performed, and public evidentiary hearings were held on March 23, 2007, and November 2, 2007. On December 19, 2007, the District's board of directors reopened the hearing process for further testing, evaluation, and testimony on the surface water/groundwater issue. In early 2008, additional testing and analysis were undertaken, and on July 25, 2008, the Foundation's expert submitted a written report to the hearing examiner.

In her written report, the hearing examiner summarized the testimony of the various experts regarding the testing that was performed. The hearing examiner questioned the testimony of the Foundation's expert on several grounds and concluded the weight of the evidence presented by the expert witnesses "substantially supports the conclusion that the water to be produced from the proposed well is groundwater." The hearing examiner noted that the Texas Water Code required the District to issue permits for all managed available groundwater, to the extent possible, when administratively complete applications are submitted. The hearing examiner recommended two alternative courses of action: (1) issue the permit to Pavlas with conditions that would require the well to be monitored and would require monthly reporting of production; or (2) place a moratorium on all permits since the District was in the midst of the initial joint planning process for Groundwater Management Area 7, which includes Edwards and Real Counties, and scientific data for the

groundwater availability model was scanty and unreliable. The hearing examiner noted that the Texas Water Development Board had averred that the Edwards-Trinity GMA "may not reflect reality in parts of the aquifer and should be re-calibrated." The hearing examiner noted that the moratorium could prevent the District from over-permitting and subsequently discovering that production within the District exceeded the amount of managed available groundwater, thereby requiring across-the-board permit reductions or revocations.

The District's board of directors was scheduled to meet on August 20, 2008, to consider the application and the hearing examiner's recommendation. On the morning of the meeting date, the Foundation filed a petition for declaratory judgment in district court. Both the District and Pavlas were named as defendants.

In the petition, the Foundation initially requested the trial court to "determine the rights, status, and legal relations of and between the Foundation, the District and Pavlas under the Texas Water Code and Texas law conferring jurisdiction on the District." The petition then sought the following declarations:

(1) The District exceeds its jurisdiction by issuing permits which authorize the pumping of state water. In regard to this request, the petition alleges, "In the case of Permit Application No. RO11107-1, Mr. Leo Pavlas/Riding River Ranch Applicant, the District is about to or has already exceeded its jurisdiction by issuing a permit authorizing the pumping of state [surface] water and, unless this Court declares this conduct improper, is calculated to do so again with regard to others similarly situated."

(2) The District exceeds its jurisdiction by following a policy which is calculated to allow or does allow issuance of permits authorizing the pumping of state water. In regard to this request, the petition alleges, "This has occurred in the case of Permit Application No. RO11107-01, Mr. Leo Pavlas/Riding River Ranch, Applicant, and unless the policy is declared improper, the District is calculated to do so again."

(3)     The District exceeds its jurisdiction by issuing well permits without adequate testing to ensure that the water being produced by the well is groundwater.  In regard to this request, the petition alleges, "In the case of Permit Application No. RO11107-01, Mr. Leo Pavlas/Riding River Ranch, Applicant, the District has failed to require adequate testing to ensure that the water being produced by the well is groundwater, and if this failure is not declared improper, the District is calculated to fail to do so again."

(4)     The District exceeds its jurisdiction by issuing well permits without first testing the proposed well under conditions which approximate the actual proposed operation of the well.  In regard to this request, the petition alleges, "In the case of Permit Application No. RO11107-01, Mr. Leo Pavlas/Riding River Ranch, Applicant, the District has failed to test under conditions which approximate the actual proposed operation of the well, and if this failure is not declared improper, the District is calculated to fail to do so again with regard to other applicants."

(5)     The District exceeds its jurisdiction by issuing commercial well permits in the absence of available groundwater.  In regard to this request, the petition alleges, "This has already occurred, or is likely to occur, in the case of Permit Application No. RO11107-01, Mr. Leo Pavlas/Riding River Ranch, Applicant, and unless declared improper, is calculated to occur again."

(6)     The District exceeds its jurisdiction by issuing commercial well permits without adequately determining the presence of available groundwater.  In regard to this request, the petition alleges, "When a district is presented with inaccurate or insufficient data regarding the presence of available groundwater, the district may not issue additional permits and should place a moratorium on the issuance of any new permits, until the availability of sufficient groundwater has been reasonably established, such as has recently occurred in the Hays Trinity and Cow Creek Groundwater Conservation Districts.  The validity and accuracy of the data used by the District in determining the presence of available groundwater has been called into question by numerous entities and individuals, including the Texas Water Development Board, the General Manager of the District, and the President of the District."

(7)     The District exceeds its jurisdiction by issuing permits in the absence of adequate notice of permit hearings. In regard to this request, the petition alleges, "This has already occurred, or is likely to occur, in the case of Permit Application No. RO11107-01, Mr. Leo Pavlas/Riding River Ranch, Applicant, wherein the District failed to properly post notice of the Applicant's Amended Application for Operating Permit, and unless declared improper, is calculated to occur again."

After the Foundation's petition was filed, the District's board of directors voted to grant Pavlas the permit with certain special conditions. In particular, the permit contained the following language in a section entitled "Special Provisions and Conditions:"

The Permittee shall maintain a daily monitoring system to test the quality of the water to ensure that there is no inflow of surface water into the well. The District may have access to the well to conduct water quality tests. Evidence that the well is producing surface water or is under the influence of surface water shall immediately suspend the operating permit subject to an appeal to the Board.

The District and Pavlas responded to the petition by filing separate pleas to the jurisdiction. The pleas asserted that the Foundation was attempting to bypass the provisions of the Texas Water Code that require a person seeking to challenge the District's decision on a permit application to file a motion for rehearing before the District and otherwise exhaust administrative remedies before filing a suit against the District to appeal its decision. The pleas asserted that because the District had exclusive jurisdiction over disputes involving groundwater permits, the Foundation's failure to exhaust the administrative remedies available under the Texas Water Code deprived the trial court of jurisdiction to consider the Foundation's petition for declaratory relief. Pavlas's plea further asserted the Foundation's claims were not justiciable. The Foundation filed a response asserting the trial court had jurisdiction because the requested declarations were much broader than the validity

of Pavlas's permit. After a hearing, the trial court signed an order granting the District's and Pavlas's pleas to the jurisdiction.

The Foundation filed a motion for new trial based on newly discovered evidence and a motion for reconsideration after the motion for new trial was overruled by operation of law. The new evidence the Foundation relied upon was evidence that the District had placed a moratorium on accepting applications for permits in the alluvial aquifers and formations in Edwards and Real Counties. The District's resolution recited a concern regarding the data available relating to the amount of water that remains available for permitting in the alluvial formations in Edwards and Real Counties. The moratorium did not affect permit applications filed before the effective date of the moratorium or applications for permits not in alluvial aquifers and formations. After a second hearing, the trial court signed an order denying the District's and Pavlas's pleas to the jurisdiction. The District appeals the trial court's order.[1]

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea by which a party challenges a court's authority to determine the subject matter of the action. *Kinney County Groundwater Conservation Dist. v. Boulware*, 238 S.W.3d 452, 458 (Tex. App.—San Antonio 2007, no pet.). Whether a trial court has subject matter jurisdiction is a question of law subject to de novo review. *Id*. The plaintiff bears the burden of pleading facts that show the district court has subject matter jurisdiction. *Id*. In reviewing

---

[1] This court has jurisdiction to consider the District's interlocutory appeal pursuant to section 51.014(a)(8) of the Texas Civil Practice and Remedies Code, which permits an appeal from an interlocutory order denying a plea to the jurisdiction filed by a governmental unit. TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)8) (Vernon 2008). We note that Pavlas e-mailed a 17 page amicus brief to this court on January 13, 2010; however, the amicus brief was not properly received by mail until January 15, 2010, after this case was submitted following oral argument on January 14, 2010. Therefore, the court finds good cause to refuse to consider the amicus brief and orders the clerk of this court to return the brief. TEX. R. APP. P. 11.

a trial court's ruling on a plea to the jurisdiction, we construe the pleadings in favor of the pleader and look to the pleader's intent. *Id.* We consider only the pleadings and evidence relevant to the question of jurisdiction and do not look to the merits of the case. *Bexar Metro. Water Dist. v. City of San Antonio*, 228 S.W.3d 887, 892 (Tex. App.—Austin 2007, no pet.).

### JUSTICIABLE CONTROVERSY

The District contends that the relief sought by the Foundation is improper because no justiciable controversy has arisen regarding the relief sought. The District agrees that it cannot issue permits for state or surface water, and the only dispute with regard to whether the District was exceeding its authority was its issuance of Pavlas's permit. Although the Foundation contends that improper testing was performed to determine the availability of groundwater, the District disagrees, believing the testing showed sufficient availability of groundwater to support the issuance of the permit.

A.      Preservation of Justiciability Complaint

The Foundation initially responds that the District did not raise its justiciability complaint in its plea to the jurisdiction so it cannot raise this complaint on appeal. As authority to support its preservation argument, the Foundation cites this court's decision in *Boulware*. 238 S.W.3d at 461.

In *Boulware*, this court relied on decisions from a number of other courts in stating the following general rule regarding preservation in this context:

> We are to confine our review on appeal to the ruling on the plea to the jurisdiction that was actually filed, and may not address whether a trial court erred in denying a plea on a ground that was not argued below. *See Austin Indep. Sch. Dist. v. Lowery*, 212 S.W.3d 827, 834 (Tex. App.—Austin 2006, pet. denied); *Brenham Housing Auth. v. Davies*, 158 S.W.3d 53, 61 (Tex. App.—Houston [14th Dist.] 2005, no pet.); *City of Dallas v. First Trade Union Sav. Bank*, 133 S.W.3d 680, 686-87 (Tex. App.—Dallas 2003, pet. denied). "Although subject matter jurisdiction cannot be

> waived and may be raised for the first time in an appeal from a final judgment, section 51.014(a)(8) of the civil practice and remedies code does not grant this Court jurisdiction to review claims that were neither included in the plea to the jurisdiction nor considered by the district court." *Lowery*, 212 S.W.3d at 834.

Therefore, under this general rule, we review only the grounds included in the plea to the jurisdiction and the grounds argued before and considered by the trial court. *See Lowery*, 212 S.W.3d at 834.

Applying the general rule to the specific facts in the instant case, we first note that the trial court considered the plea to the jurisdiction filed by the District and the plea to the jurisdiction filed by Pavlas in a joint hearing. The attorneys representing Pavlas and the District at the hearing relied on each other's arguments. In fact, the attorney representing the District initially stated that he did not have a whole lot to add to what Pavlas's attorney said. The plea to the jurisdiction filed by Pavlas specifically stated, "The Plaintiff's claims under the Uniform Declaratory Judgment Act are not justiciable and are moot." Because the trial court held a joint hearing on both pleas and the attorney representing the District relied on the arguments made by Pavlas's attorney, we believe the justiciability ground was sufficiently raised before the trial court, thereby allowing this court to review the ground on appeal. *See Amalgamated Acme Affiliates, Inc. v. Minton*, 33 S.W.3d 387, 392 n.2 (Tex. App.—Austin 2000, no pet.) (noting party may adopt motion or pleading of another party where record contains sufficient indication of intent to adopt).

Even assuming, however, that the District could not rely on the grounds asserted in Pavlas's plea, the trial court initially signed an order granting the pleas after the first hearing. The Foundation subsequently filed a motion for new trial based on newly discovered evidence and a motion to reconsider the motion for new trial after it was overruled by operation of law. The District filed responses to both motions raising justiciability as a ground for the trial court to deny the motions.

After a second hearing, the trial court signed an order granting the motion to reconsider the motion for new trial and denying the pleas. In the order, the trial court stated that it considered the motion and the responses; therefore, justiciability was a ground before the trial court for its consideration. Accordingly, we hold our review of the trial court's order may address whether the trial court erred in denying the plea on the basis of justiciability.[2]

B.     Discussion

Ripeness and standing are related doctrines of justiciability. *Tex. Dept. of Ins. v. Reconveyance Servs., Inc.*, 240 S.W.3d 418, 435 (Tex. App.—Austin 2007, pet. filed). Ripeness implicates subject-matter jurisdiction and emphasizes the requirement of a concrete injury in order to present a justiciable claim. *Reconveyance Servs., Inc.*, 240 S.W.3d at 435; *City of Waco v. Tex. Nat. Res. Conservation Comm'n*, 83 S.W.3d 169, 175 (Tex. App.—Austin 2002, pet. denied). Ripeness is concerned with when an action can be brought and seeks to conserve judicial time and resources for real and current controversies rather than hypothetical or remote disputes. *City of Waco*, 83 S.W.3d at 175. Courts of this state may not issue advisory opinions, and an opinion issued in a case that is not ripe would address only a hypothetical injury rather than remedying actual or imminent harm. *Id*. In the administrative law context, moreover, avoiding premature litigation over administrative determinations prevents courts from entangling themselves in abstract disagreements over administrative policies while simultaneously protecting agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the

---

[2] Based on the analysis of the Houston court's decision in *Harris County Mun. Util. Dist. No. 156 v. United Somerset Corp.*, 274 S.W.3d 133, 137-38 (Tex. App.—Houston [1st Dist.] 2008, no pet.), particularly its citation to *Waco Ind. Sch. Dist. v. Gibson*, 22 S.W.3d 849, 850 (Tex. 2000), we question our holding in *Boulware* that standing could not be raised as a ground for reviewing a trial court's ruling on a plea to the jurisdiction if standing was not raised or argued before the trial court. *See Harris County Mun. Util. Dist. No. 156*, 274 S.W.3d at 137-38 (holding appellate court may address ripeness in reviewing trial court's ruling on a plea to the jurisdiction even if not raised in plea).

challenging parties. *Reconveyance Servs., Inc.*, 240 S.W.3d at 435; *Tex. Court Reporters Certif. Bd. v. Esquire Deposition Servs., L.L.C.*, 240 S.W.3d 79, 92 (Tex. App.—Austin 2007, no pet.).

In determining whether a cause is ripe for judicial consideration, we look to see whether the facts have sufficiently developed to show that an injury has occurred, or is likely to occur. *City of Waco*, 83 S.W.3d at 175. A person seeking a declaratory judgment need not have incurred an actual injury; a declaratory judgment will lie if the facts show the presence of ripening seeds of controversy. *Id*. In the context of claims regarding the scope of agency authority, ripeness may turn on whether the issues presented are purely legal in nature as opposed to requiring consideration of particularized facts in light of agency expertise. *Texas Court Reporters Certif. Bd.*, 240 S.W.3d at 92.

In *Beacon Nat'l Ins. Co. v. Montemayor*, the underlying controversy stemmed from Beacon's treatment of its insureds' claims for roof repairs. 86 S.W.3d 260, 264 (Tex. App.—Austin 2002, no pet.). Beacon took the position that its insurance policy did not require it to pay for repairs or replacement of roofing layers damaged by excluded perils, such as wear and tear, but only for roof damage caused by covered perils, such as hail. *Id*. As a result, Beacon's position was that it was required to replace only one layer of roofing. *Id*. The Texas Department of Insurance informed Beacon in a letter that it was required to remove sufficient layers to obtain a nailable surface, i.e., a surface to which a new roof may adequately be affixed. *Id*. at 264-65. Based on what Beacon claimed were TDI's announced intentions, Beacon sued TDI seeking declaratory relief regarding its contract rights and obligations under its insurance policy. *Id*. at 265.

The trial court granted TDI's plea to the jurisdiction. *Id*. The Austin court affirmed, noting Beacon's claims concerned abstract insurance contracts and hypothetical sets of facts. *Id*. at 267. The Austin court further noted that Beacon's claims required determination of several factual matters

which had not been sufficiently developed. *Id*. at 268. The Austin court distinguished another opinion in which it held that a party had properly presented a request for declaratory relief. *Id*.

The opinion distinguished by the Austin court in *Beacon Nat'l Ins. Co.* was *City of Waco v. Texas Nat. Res. Conversation Comm'n*, 83 S.W.3d 169 (Tex. App.—Austin 2002, no pet.). In *City of Waco*, the Texas Natural Resource Conservation Commission (TNRCC) determined that waste produced by confined animal feeding operations (CAFO) had impaired the water quality of stretches of the North Bosque River. 83 S.W.3d at 173. Under the Federal Clean Water Act, once the TNRCC made this determination, it was required to develop a Total Maximum Daily Load, which is a plan for assimilation of the pollutants that are present in the water. *Id*. The City of Waco sued the TNRCC seeking a declaration that the TNRCC could not grant any additional permits for CAFOs in the Bosque River watershed until it complied with the federal regulations that had been incorporated into state law. *Id*. at 172-73.

In response to the TNRCC's plea to the jurisdiction, the City argued that it sought resolution of a pure question of law: whether the federal regulations operated to bar *all* new permits until the TNRCC developed an implementation scheme to reduce pollution in the two impaired segments of the Bosque River. *Id*. at 173. The TNRCC argued that the City's suit would not be ripe until the TNRCC issued a specific permit; however, the TNRCC admitted that its interim policy was to continue to grant new permits as long as additional discharge would not worsen the environmental status quo of the impaired river. *Id*. at 174-75.

The Austin court concluded that the question of whether the federal regulations operated to prohibit the TNRCC from approving any new discharge permits until it adopted the necessary pollution-reduction measures presented a purely legal inquiry. *Id*. at 177. The court noted that the

purely legal question would not benefit from the development of additional facts in connection with a specific permit application. *Id.* The court further concluded that the facts had sufficiently developed as between TNRCC and the City such that the dispute was not hypothetical. *Id.*

Distinguishing the *City of Waco* decision in *Beacon Nat'l Ins. Co.*, the Austin court emphasized that the City in the *City of Waco* case was seeking a declaration of the effect of the federal regulations incorporated into state law on the TNRCC's ability to issue permits, which was a pure question of law. 86 S.W.3d at 268. The Austin court asserted that the City's claims did not require the determination of facts in the context of an individual permit. *Id.*

The question presented in the instant case, therefore, is whether the Foundation is seeking a declaration that involves a pure question of law or whether the claim requires the determination of factual matters that have not been sufficiently developed. The District does not assert that it has the right to issue permits for surface water or without providing adequate notice of permit hearings. In fact, the District's rules specify the type of notice of permit hearings that is required. With regard to most of its claims, the Foundation simply takes issue with the manner in which the District determined the Pavlas well would pump groundwater as opposed to surface water in approving the permit. Those claims do not assert a question of law but challenge the exercise of the District's discretion to issue a permit based on the type of testing undertaken in a particular situation. Those claims require the development of facts regarding the testing undertaken in relation to an individual permit. Finally, the claim regarding the issuance of permits without adequately determining the presence of available groundwater necessarily rests on a fact issue relating to how much groundwater is available in order to issue a particular permit. Because the Foundation's claims do not present a pure legal question but require the development and consideration of particularized facts in light of

the District's expertise, the Foundations' claims are not justiciable. Accordingly, the trial court erred in denying the District's plea.

## CONCLUSION

The trial court's order is reversed, and the cause is remanded to the trial court with instructions to dismiss the Foundation's claims and to consider the District's request for attorney's fees. *See* TEX. WATER CODE ANN. 36.066(g) (Vernon 2008).

Catherine Stone, Chief Justice