# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00367-CV

**Bexar Metropolitan Water District, Appellant**

**v.**

**City of Bulverde, Texas; Guadalupe-Blanco River Authority;
City of Boerne; and City of Fair Oaks Ranch, Appellees**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. C2003-1201A, HONORABLE GARY L. STEEL, JUDGE PRESIDING

## O P I N I O N

The City of Bulverde ("Bulverde") and the Guadalupe-Blanco River Authority ("GBRA") sought declaratory judgments in the Comal County District Court. They asked the trial court to determine Bexar Metropolitan Water District's ("BexarMet") boundaries, to determine if BexarMet can provide water-utility services outside its boundaries, and to determine whether BexarMet has the authority to expand its territory outside of the boundaries defined in BexarMet's enabling act. In response, BexarMet filed a plea to the jurisdiction arguing that the district court did not have subject-matter jurisdiction over the controversy in question. The district court denied BexarMet's plea to the jurisdiction, and BexarMet appeals that decision. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a) (West Supp. 2004-05). On appeal, BexarMet contends that the Texas Water Code prohibits Bulverde and GBRA from contesting its boundaries, that Bulverde and GBRA do

not have standing to file the claims in question, that the Texas Commission on Environmental Quality ("the Commission") has exclusive and primary jurisdiction over the claims in question, and that GBRA cannot bring a cause of action under the Uniform Declaratory Judgment Act ("UDJA") because it does not qualify as a "person" entitled to bring the suit. We will affirm the district court's denial of BexarMet's plea to the jurisdiction.

## FACTUAL AND PROCEDURAL BACKGROUND

Water districts are created by statute and can only exercise powers clearly given to them by the legislature. *Tri-City Fresh Water Supply Dist. No. 2 of Harris County v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940). The boundaries of water districts are defined by statute. *See Harris County Water Control & Imp. Dist. No. 58 v. City of Houston*, 357 S.W.2d 789, 796 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.).

Some water-district enabling acts provide that water districts may sell or distribute water only *within* their boundaries. *See, e.g.*, Act of May 29, 1965, 59th Leg., R.S., ch. 557, § 2(a), 1965 Tex. Gen. Laws 1207, 1208 (amending Act of May 20, 1937, 45th Leg., R.S., ch. 454, § 2(a), 1937 Tex. Gen. Laws 1128, 1128) (District may "sell . . . within the boundaries of the District"). Other enabling acts allow a water district to distribute or sell water *within* or *without* the district's boundaries. *See, e.g.*, Act of May 4, 1961, 57th Leg., R.S., ch. 114, § 5(f), 1961 Tex. Gen. Laws 217, 220 (District may "sell . . . water within or without the boundaries of the district").

In 1947, the Texas Attorney General released an opinion stating that a specific water district could not sell water outside of its boundaries because its enabling statute limited sale of water to *within* the district. Op. Tex. Att'y Gen. No. V-319 (1947). The attorney general concluded that

2

if a district was not authorized to sell or distribute water outside of its boundaries, the legislature must have intended that the water only be sold or distributed *within* the water district's boundaries. *Id.*

BexarMet was created in 1945 and was given the authority of a "governmental agency, a body politic and corporate, and a municipal corporation." Act of May 9, 1945, 49th Leg., R.S., ch. 306, § 2, 1945 Tex. Gen. Laws 491, 492 ("BexarMet Act"). BexarMet's original enabling act stated that BexarMet's district was within Bexar County, Texas. *Id.* § 5, 1945 Tex. Gen. Laws at 494. The original enabling act allowed BexarMet to annex territory and expand its boundaries. *Id.* § 6, 1945 Tex. Gen. Laws at 496. In addition, BexarMet's boundaries were extended automatically to any territory that was annexed into the City of San Antonio. *Id.* § 6a, 1945 Tex. Gen. Laws at 497.

On several occasions, BexarMet has expanded its territory to areas outside the territory defined in its original enabling act. However, rather than annexing territory as provided for in the original enabling act, BexarMet has, over the years, enlarged its territory by obtaining certificates of convenience and necessity ("CCNs") from the Commission[1] in order to serve the water needs of cities and rural areas throughout the state.[2]

The controversy in question began in 2000 when BexarMet and Bulverde both filed applications with the Commission asking for a CCN to provide water service to part of southwestern

---

[1] For convenience, we will refer to both the Commission and its predecessor, the Texas Natural Resource Conservation Commission, as the Commission.

[2] BexarMet, through the CCN process, has expanded its service to areas in Atascosa, Comal, and Medina counties.

Comal County. In its application, Bulverde informed the Commission that in order to fulfill its water service requirements under the CCN, it would be relying on an agreement with GBRA to provide Bulverde with water.

The competing applications of BexarMet and Bulverde were referred to the State Office of Administrative Hearings. The administrative law judge recommended that BexarMet's CCN application be granted and Bulverde's be denied. Bulverde and GBRA objected to the proposal for decision, and the Commissioners reversed the decision of the administrative law judge and awarded CCN No. 12864 to Bulverde. BexarMet appealed the decision of the Commissioners to the Travis County District Court.

In 2003, after the Commissioners awarded the CCN to Bulverde, the legislature passed Senate Bill 1494, which amended BexarMet's enabling act. Act of May 28, 2003, 78th Leg., R.S., ch. 375, 2003 Tex. Gen. Laws 1593 ("BexarMet Amendment") (amending BexarMet Act, 1945 Tex. Gen. Laws 491). The amendment added the words "within the District" to statutory language describing BexarMet's ability to develop, transport, deliver, distribute, store, and treat water. BexarMet Amendment, § 2, 2003 Tex. Gen. Laws at 1593 (amending BexarMet Act § 3(a), 1945 Tex. Gen. Laws at 492). The amendment also added two new provisions that granted BexarMet new powers, but the language limited the authority to act to "within" BexarMet's district. BexarMet Amendment, § 2, 2003 Tex. Gen. Laws at 1595. In addition, the amendment defined BexarMet's boundaries. The boundaries included not only Bexar County but also the territory that had been certificated to BexarMet in prior CCNs issued by the Commission and described in CCN Nos. 10675, 12759, and 12760. BexarMet Amendment, § 3, 2003 Tex. Gen. Laws at 1596. When Senate

4

Bill 1494 passed, CCN Nos. 10675, 12759, and 12760 identified areas in Bexar, Comal, Medina, and Atascosa counties as part of BexarMet's territory.

Bulverde and GBRA assert that the addition of "within" to the enabling act provisions evidences an intention by the legislature to limit the activities of BexarMet to within its own territory. Bulverde and GBRA also insist that, after the amendment inserted *within* into BexarMet's enabling act, BexarMet does not have the authority to provide water service to areas outside of its boundaries including the areas in Comal County that were certificated to Bulverde by CCN No. 12864. Finally, Bulverde and GBRA contend that the amendment limits BexarMet's boundaries to those areas described in the amended enabling act and prevents BexarMet from expanding its boundaries.

In response, BexarMet asserts that the amendment to its enabling act does not prevent it from expanding its service areas or its boundaries through CCNs granted by the Commission. BexarMet concedes that the amendment repealed sections 6 and 6a of the original enabling act, which had given BexarMet the power to annex territory and had automatically extended BexarMet's boundaries when San Antonio's city limits were extended, but contends that the amendment does not prevent BexarMet from annexing territory through CCNs issued by the Commission. *See* BexarMet Amendment, § 5(b), 2003 Tex. Gen. Laws at 1596 (amending BexarMet Act, §§ 6, 6a, 1945 Tex. Gen. Laws at 496). As proof of this assertion, BexarMet points to a letter written by the sponsor of Senate Bill 1494 to the Commission's executive director stating that Senate Bill 1494 repealed portions of BexarMet's enabling act that were inconsistent with a federal court decision

5

regarding voting rights in BexarMet elections, but it states that Senate Bill 1494 did not restrict BexarMet's ability to expand its boundaries or obtain CCNs.

After the legislation was enacted, Bulverde and GBRA filed suit in Comal County District Court in order to prevent BexarMet from expanding into Comal County. In their suit, Bulverde and GBRA asked for declaratory judgments regarding BexarMet's statutory boundaries, BexarMet's authority to annex territory outside its statutory boundaries, and BexarMet's authority to provide water-utility services outside of its statutory boundaries. Specifically Bulverde and GBRA wanted the court to declare the following: (1) BexarMet's boundaries include only the territory listed in its current enabling statute, (2) BexarMet does not have the authority to annex territory outside of its boundaries, (3) BexarMet cannot provide water-utility services to areas outside its boundaries including areas in Comal County not already awarded to BexarMet, and (4) Bulverde, not BexarMet, has the exclusive right to provide water-utility service to the areas in Comal County listed in CCN No. 12864.

In response, BexarMet filed a motion to transfer venue to Travis County, a plea to the jurisdiction, and a plea in abatement. The district court denied all of BexarMet's requests. BexarMet files this interlocutory appeal from the denial of its plea to the jurisdiction.

## STANDARD OF REVIEW

A person may file an interlocutory appeal from either the granting or the denial of a plea to the jurisdiction brought by a governmental unit.[3] Tex. Civ. Prac. & Rem. Code Ann.

---

[3] Section 100.001 of the Texas Civil Practice and Remedies Code includes agencies and water districts as part of the definition of governmental unit. Tex. Civ. Prac. & Rem. Code Ann.

6

§ 51.014(a)(8). A plea to the jurisdiction contests the trial court's authority to adjudicate the subject matter of the cause of action. *Texas Dep't. of Transp. v. Jones*, 85 S.W.3d 636, 638 (Tex. 1999). In reviewing the grant or denial of a plea to the jurisdiction, we do not review the merits of the case. *Chocolate Bayou Water Co. & Sand Supply v. Texas Natural Res. Conservation Comm'n*, 124 S.W.3d 844, 849 (Tex. App.—Austin 2003, pet. denied) (citing *Rylander v. Caldwell*, 23 S.W.3d 132, 135 (Tex. App.—Austin 2000, no pet.)).

Because the statute authorizing interlocutory appeals is a narrow exception to the general rule that only final judgments and orders are appealable, we must give it a strict construction. *See City of Austin v. L.S. Ranch, Ltd.*, 970 S.W.2d 750, 753 (Tex. App.—Austin 1998, no pet.); *America Online, Inc. v. Williams*, 958 S.W.2d 268, 271 (Tex. App.—Houston [14th Dist.] 1997, no pet.); *Tober v. Turner of Tex., Inc.*, 668 S.W.2d 831, 835 (Tex. App.—Austin 1984, no writ). Thus, we will limit our discussion to the narrow issue that is before us, the question of whether the trial court erred in denying BexarMet's plea to the jurisdiction.

We review a district court's ruling on a plea to the jurisdiction de novo. *State Dep't. of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002). Our task is to take the facts pled in the petitions as true and determine if subject-matter jurisdiction is present. *City of Mission v. Cantu*, 89 S.W.3d 795, 800 (Tex. App.—Corpus Christi 2002, no pet.). Unless the face of the petition affirmatively demonstrates a lack of jurisdiction, the allegations in the petition will be liberally construed in favor of jurisdiction. *Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 266 (Tex. App.—Austin 2002, no pet.).

---

§ 100.001 (West Supp. 2004-05).

**DISCUSSION**

BexarMet contends that the Comal County court does not have jurisdiction to hear Bulverde's and GBRA's claims. On appeal, BexarMet raises the following claims: (1) only the attorney general, not Bulverde or GBRA, may file a suit contesting a water district's boundaries; (2) Bulverde and GBRA lack standing to file this lawsuit; (3) the Commission has primary or exclusive jurisdiction over the subject matter of this lawsuit; and (4) GBRA does not qualify as a person entitled to bring this suit under the UDJA. We will address BexarMet's claims in order.

**Only the Attorney General may File Suit**

In its first issue on appeal, BexarMet contends that section 49.066 of the Texas Water Code prohibits Bulverde's and GBRA's suit because the provision prohibits third-party challenges to a water district's boundaries. *See* Tex. Water Code Ann. § 49.066 (West 2000). BexarMet asserts that challenges to a water district's boundaries can only be brought by the attorney general in a quo warranto proceeding.

A writ of quo warranto is an ancient common-law writ that gave the king an action against a person who claimed or usurped any office, franchise, or liberty, to inquire by what authority that person supported the claim to hold office. *State ex rel. City of Colleyville v. City of Hurst*, 519 S.W.2d 698, 700 (Tex. Civ. App.—Fort Worth 1975, writ ref'd n.r.e.). In the modern context, the state may use a quo warranto action to challenge the authority to engage in certain practices specifically enumerated by statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 66.001 (West 1997). A quo warranto proceeding may be instituted by the attorney general or by a district or county attorney. *See* Tex. Const. art. IV, § 22; Tex. Civ. Prac. & Rem. Code Ann. § 66.002 (West 1997).

8

Section 49.066 states "no suit may be instituted in any court of this state contesting: (1) the validity of the creation and boundaries of a district created under this code." Tex. Water Code Ann. § 49.066(d). However, the water code does allow the attorney general to file a suit contesting either the validity of the creation of a water district or the validity of the boundaries of a water district enacted by the legislature. BexarMet claims that the suit filed by Bulverde and GBRA impermissibly contests BexarMet's boundaries. To support this assertion, BexarMet points to language in the trial court pleadings in which Bulverde and GBRA describe their suit as one involving a dispute over BexarMet's boundaries. BexarMet also points to language in Bulverde's and GBRA's amended pleadings and motions that repeatedly refer to BexarMet's boundaries.

However, we do not interpret section 49.066 to prohibit all third-party suits involving a water district's boundaries. The third-party prohibition only applies to claims attacking the *validity* of a legislative act creating a water district's boundaries. *Id.*; *see Walling v. North Cent. Tex. Mun. Water Auth.*, 348 S.W.2d 532 (Tex. 1961) (writ of quo warranto appropriate remedy when alleging statute not followed when establishing territory limits); *La Salle County Water Improvement Dist. No. 1 v. Guinn*, 40 S.W.2d 892 (Tex. Civ. App.—San Antonio 1931, writ ref'd) (writ of quo warranto required to contest legality of 85,000 acre water district reduced from 200,000 acres).

The third-party prohibition does not apply in this case because Bulverde and GBRA are not attacking the *validity* of BexarMet's boundaries as defined by the legislature. Here, Bulverde and GBRA are asking the district court to determine what BexarMet's boundaries are after Senate Bill 1494 amended BexarMet's enabling statute. In addition, Bulverde and GBRA are seeking a court declaration determining whether BexarMet has the power to both expand its boundaries

9

through a CCN and provide water-utility services outside its boundaries under BexarMet's amended enabling act. Requesting a declaration regarding the location of a district's boundaries and the district's authority to provide service and expand its boundaries is not the same as challenging the validity of those boundaries. Such determinations are not prohibited by section 49.066.

Because section 49.066 of the Texas Water Code does not prohibit Bulverde and GBRA from filing their claims before the Comal County District Court, we overrule BexarMet's first issue.

**Standing**

In its second issue on appeal, BexarMet urges that Bulverde and GBRA lack standing to file the suit in question for the following three reasons: (1) only the attorney general can file boundary contests; (2) competitors of BexarMet cannot file suit to limit BexarMet's ability to act; and (3) Bulverde and GBRA do not have an underlying cause of action necessary to confer standing for a UDJA claim.

As for point number one, we have already explained that a quo warranto proceeding is not necessary to pursue Bulverde's and GBRA's claims and that it is not necessary for the attorney general to file these claims because Bulverde and GBRA are not attacking the validity of the creation of BexarMet's boundaries.

As for BexarMet's second point, although there are cases suggesting that a competitor, without more, lacks standing to challenge the actions of its competitor, this prohibition does not apply here. *See, e.g.*, *English v. Landa Motor Lines*, 166 S.W.2d 721, 723 (Tex. Civ. App.—Austin 1942, writ ref'd w.o.m.). BexarMet contends that, as competitors, Bulverde and

10

GBRA may not challenge BexarMet's actions because only parties interested in a corporation or the state may challenge a corporation's actions. *See Southwestern Pub. Serv. Co. v. Public Util. Comm'n*, 578 S.W.2d 507, 513 (Tex. Civ. App.—Austin 1979, writ ref'd n.r.e.) (Southwestern, as a competitor, lacked justiciable interest to challenge competitors actions; "whether a corporation has acted in excess of its lawful powers can be raised only by a party interested in the corporation or in a direct proceeding brought by the state."); *Mulcahy v. Houston Steel Drum Co.*, 402 S.W.2d 817, 819-20 (Tex. Civ. App.—Austin 1966, no writ) (attorney general can file quo warranto action to prevent corporation from engaging in behavior prohibited by law).

However, in this case, GBRA is not merely a competitor of BexarMet. BexarMet has filed with the Commission a petition to compel raw water commitment from GBRA. The petition would require GBRA to provide BexarMet with 3,000 acre-feet of water per year. GBRA, therefore, has a larger stake in the outcome of this case than as a mere competitor.

In addition, Bulverde and GBRA are claiming that BexarMet is acting beyond the authority granted to it by statute. Bulverde and GBRA insist that after Senate Bill 1494 amended BexarMet's enabling act, BexarMet lacks the authority to annex territory outside its boundaries and does not have the authority to provide or seek to provide retail water-utility service to areas outside its boundaries including the areas certificated to Bulverde.

If a water district acts beyond its statutory powers, its actions are void. *Tri-City*, 142 S.W.2d at 947; *see also Mobil Oil Corp. v. Matagorda County Drainage Dist. No. 3*, 597 S.W.2d 910, 913 (Tex. 1980) (holding that drainage district's attempt to annex lands was beyond its statutory power and therefore null). If a governmental authority's actions are void, as opposed to voidable,

11

the actions can be challenged by affected persons. *See City of Irving v. Callaway*, 363 S.W.2d 832, 834 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.) (quo warranto proceeding necessary where actions are voidable, but quo warranto proceeding not necessary and claim may be brought by private citizens affected by action when annexation ordinance attacked on grounds alleging action void).

Bulverde and GBRA seek declarations that actions undertaken by BexarMet are beyond the scope of its statutory authority and, therefore, void. In addition, both Bulverde and GBRA are parties affected by the actions of BexarMet. Bulverde and BexarMet are seeking to provide water-utility services in the same area, while GBRA could be forced to provide water to BexarMet. Because Bulverde and GBRA are alleging that BexarMet's actions are beyond the scope of its statutory authority and because both are parties affected by the actions of BexarMet, Bulverde and GBRA have standing to seek a declaratory judgment.

In its third standing point, BexarMet contends that Bulverde and GBRA lack standing to bring suit against BexarMet because they do not have an underlying common-law, statutory, or constitutional cause of action. BexarMet asserts that the UDJA does not enlarge a court's jurisdiction and that a claimant pursuing a declaratory judgment must have an underlying cause of action.

However, suits under the UDJA are not limited to cases where the parties have a cause of action separate and apart from the UDJA. *City of Waco v. Texas Natural Res. Conservation Comm'n*, 83 S.W.3d 169, 177 (Tex. App.—Austin 2002, pet. denied). The UDJA provides a basis for a claimant to obtain a declaration of rights, status, or other legal relations under a writing or statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.004 (West 1997); *City of Waco*, 83 S.W.3d at

12

177. The legislature intended the UDJA to be remedial, to settle and afford relief from uncertainty and insecurity with respect to rights, and to be liberally construed. Tex. Civ. Prac. & Rem. Code Ann. § 37.002 (West 1997); *Bonham State Bank v. Beadle*, 907 S.W.2d 465, 467 (Tex. 1995); *City of Waco,* 83 S.W.3d at 177.

Declaratory-judgment actions are intended to determine the rights of parties when a controversy has arisen, before any wrong has actually been committed, and are preventative in nature. *Montemayor v. City of San Antonio Fire Dep't.*, 985 S.W.2d 549, 551 (Tex. App.—San Antonio 1998, pet. denied). Historically, challengers to improper governmental action have sought declaratory relief. *Frasier v. Yanes*, 9 S.W.3d 422, 427 (Tex. App.—Austin 1999, no pet.); *see Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996). A person seeking a declaratory judgment need not have incurred actual injury. *City of Waco*, 83 S.W.3d at 175; *Texas Dep't of Banking v. Mount Olivet Cemetery Ass'n*, 27 S.W.3d 276, 282 (Tex. App.—Austin 2000, pet. denied). The UDJA may be used to clarify the meaning of statutes. *Frasier*, 9 S.W.3d at 427. Courts have also issued declaratory judgments construing a statute before the statute is violated. *See The Pea Picker, Inc. v. Reagan*, 632 S.W.2d 674, 677 (Tex. App.—Tyler 1982, writ ref'd n.r.e.) (trial court had power to construe Open Meetings Act and determine whether notice must be given and when meeting is required to be open).

Bulverde and GBRA have standing under the UDJA and have the right to have the courts interpret BexarMet's amended enabling act to determine what BexarMet's boundaries are, whether BexarMet can expand its territory through CCNs, and whether BexarMet has the authority to provide water-utility service outside its boundaries. *See Frasier*, 9 S.W.3d at 427; *Pea Picker*,

13

632 S.W.2d at 677. The allegations of Bulverde and GBRA are sufficient to confer jurisdiction on the district court.

BexarMet also insists that boundary disputes cannot be litigated under the UDJA. *See Martin v. Amerman*, 133 S.W.3d 262, 267-68 (Tex. 2004). However, as previously discussed, Bulverde and GBRA are not disputing the validity of BexarMet's boundaries, and therefore, this prohibition does not deny Bulverde and GBRA standing. Because we have concluded that Bulverde and GBRA have standing to file their claims, we overrule BexarMet's second issue.

**Whether the Commission has Exclusive or Primary Jurisdiction**

In its next issue on appeal, BexarMet contends that the Commission has exclusive jurisdiction or primary jurisdiction over the issues raised in this appeal. An administrative agency has exclusive jurisdiction when the legislature gives the agency the sole authority to make an initial determination in a dispute. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 221 (Tex. 2002) (citing *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000)). An agency has exclusive jurisdiction if there is a pervasive regulatory scheme that indicates the legislature wanted the regulatory process to be the exclusive manner of resolving problems the regulation addresses. *Id.* Statutory interpretation is used to determine if an administrative agency has exclusive jurisdiction. *Id.* In determining whether an agency has exclusive jurisdiction, an appellate court uses a de novo standard. *Id.* at 222.

BexarMet insists that the legislature created a pervasive regulatory scheme for managing surface water in Texas and gave the Commission exclusive jurisdiction to decide the issues raised in this case and that Bulverde and GBRA must exhaust all administrative remedies

14

available to them before seeking judicial review. *See id.* at 221. BexarMet contends that because Bulverde and GBRA have not exhausted all administrative remedies available, the trial court does not have subject-matter jurisdiction to hear this case. *See id.* ("Typically, if an agency has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the agency's action," citing *Cash Am.*, 35 S.W.3d at 15).

However, the relevant issues in this case involve a determination of what BexarMet's boundaries are, whether BexarMet may provide water-utility service outside its boundaries, and whether BexarMet may expand its territory through CCNs issued by the Commission now that Senate Bill 1494 has passed. Unlike other cases finding an agency has exclusive jurisdiction,[4] the determination of these issues will depend on the construction of a statute.

Trial courts have general jurisdiction. *Id.* at 220. Unless a contrary showing is made, trial courts presumably have subject matter jurisdiction over a dispute. *Id.* Administrative agencies, by contrast, are not presumed to have the authority to resolve a dispute and may only exercise powers that are given to them by statute by express and clear language. *Id.*

Courts have the authority to determine what a statute means. *Amarillo Indep. Sch. Dist. v. Meno*, 854 S.W.2d 950, 955 (Tex. App.—Austin 1993, writ denied). Statutory construction is a question of law and for the court to decide. *Johnson v. City of Fort Worth*, 774 S.W.2d 653, 656

---

[4] *See Howell v. Texas Workers' Comp. Comm'n*, 143 S.W.3d 416, 435 (Tex. App.—Austin 2004, no pet.) (finding Workers' Compensation Commission had "sole authority to make an initial determination of a medical fee or a medical necessity dispute"); *Burgess v. Gallery Model Homes, Inc.*, 101 S.W.3d 550, 558 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (holding that provisions of the tax code provide "the exclusive means of obtaining a refund on an improperly collected sales tax").

(Tex. 1989). Construing a statute is an inherently judicial function, and courts are not deprived of their jurisdiction unless a statute explicitly grants an administrative agency exclusive jurisdiction. *Public Utils. Bd. of City of Brownsville v. Central Power & Light Co.*, 587 S.W.2d 782, 788 (Tex. Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.).[5]

In this case, there is no statute giving the Commission the exclusive authority to determine what a water district's enabling statute means.[6] The Comal County District Court is not deprived of jurisdiction to determine what BexarMet's boundaries are under its amended enabling act, whether BexarMet may expand its territory by obtaining CCNs, and whether BexarMet may provide water services outside the boundaries established by its enabling statute.

BexarMet also asserts that the Commission has primary jurisdiction over the claims in question. Primary jurisdiction is a prudential doctrine. *Subaru*, 84 S.W.3d at 220. Primary jurisdiction occurs when both the courts and administrative agencies have the authority to make initial determinations in a dispute. *Id.* at 221. If a trial court and an administrative agency have the authority to decide an initial issue, trial courts should allow an administrative agency to make the

---

[5] *See In re Entergy Corp.*, 142 S.W.3d 316, 322-23 (Tex. 2004) (court found Public Utility Commission was given exclusive jurisdiction because Public Utility Regulatory Act stated its purpose was to "establish a comprehensive and adequate regulatory system" and stated "the Commission has exclusive original jurisdiction over the rates, operations, and services of an electric utility," citing Tex. Util. Code Ann. §§ 31.001(a), 32.001(a) (West 1998)).

[6] *See Williams v. Houston Firemen's Relief and Ret. Fund*, 121 S.W.3d 415, 427 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (statute gave agency power to interpret its organic statute, which gave agency exclusive jurisdiction); *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 223 (Tex. 2002) (vehicle board has exclusive jurisdiction when statute said board had exclusive jurisdiction).

decision when: (1) an agency has experts trained in handling the issue; and (2) great benefit is derived from an agency interpreting its laws, rules, and regulations. *Id.*

Statutory interpretation or construction is not something that needs to be left to the Commission to decide. The Commission has no expertise that is greater than the courts in determining what a statute means. The Commission has neither exclusive jurisdiction nor primary jurisdiction over the issues raised in this case. We overrule BexarMet's third issue on appeal.

**Person under the UDJA**

In its final claim of error, BexarMet contends that GBRA cannot bring a cause of action under the UDJA because it does not qualify as a person entitled to bring a UDJA claim. The UDJA creates a remedy for "persons . . . whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise." Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997).

BexarMet asserts that if the UDJA had not defined a "person" in its statute, the Code Construction Act's definition of a "person" would apply. Because the Code Construction Act's definition of a person includes governmental entities and political subdivisions of the state, BexarMet argues GBRA would be a "person" under the Code Construction Act. Tex. Gov't Code Ann. § 311.005(2) (West 1998); *see also City of LaPorte v. Barfield*, 898 S.W.2d 288, 294 (Tex. 1995) (under Code Construction Act, person includes governmental entities). However, BexarMet insists that the definition of a "person" under the UDJA is narrower than the definition given under the Code Construction Act and does not include upper level government entities like GBRA.

The definition of a person under the UDJA includes a "corporation of any character." Tex. Civ. Prac. & Rem. Code Ann. § 37.0011 (West 1997). GBRA's enabling act declares that GBRA is "a governmental agency and body politic and corporate." Act of Oct. 12, 1933, 43d Leg., 1st C.S., ch. 75, § 1, 1933 Tex. Gen. Laws 198, 198. Because GBRA is a corporation, it qualifies as a person under the UDJA. Therefore, GBRA has a cause of action under the UDJA, and we overrule BexarMet's final issue on appeal.

## CONCLUSION

Because we overrule all of BexarMet's issues on appeal, we affirm the district court's denial of BexarMet's plea to the jurisdiction.

_____

Mack Kidd, Justice

Before Justices Kidd, Patterson and Puryear

Affirmed

Filed: November 18, 2004

18