ACCEPTED
03-14-00340-CV
5205250
THIRD COURT OF APPEALS
AUSTIN, TEXAS
5/8/2015 9:45:51 AM
JEFFREY D. KYLE
CLERK

# No. 03-14-00340-CV

FILED IN
3rd COURT OF APPEALS
~~AUSTIN, TEXAS~~

5/8/2015 9:45:51 AM
JEFFREY D. KYLE
Clerk

*In the Court of Appeals*
*Third District of Texas – Austin*

**Appellants, CPS Energy, Time Warner Cable Texas LLC, and Southwestern Bell Telephone Company d/b/a AT&T Texas// Cross-Appellant, Public Utility Commission of Texas**

**v.**

**Appellee, Public Utility Commission of Texas// Cross-Appellee, CPS Energy, Time Warner Cable Texas LLC and Southwestern Bell Telephone Company d/b/a AT&T Texas**

*On Appeal from 250th District Court, Travis County, Texas*
*Cause No. D-1-GN-13-001238 (Consolidated)*

# Joint Response of AT&T Texas and Time Warner Cable Texas LLC to the April 20, 2015 Letter from the Attorney General to the Court

Len G. Briley, Jr.
AT&T Legal Department
1010 N. St. Mary's St.
Room 14Q
San Antonio, TX 78215
Phone: (210) 351-4832
Fax: (210) 886-2127

J. David Tate
Katherine C. Swaller
Thomas Ballo
AT&T Legal Department
 816 Congress Avenue Suite 1100
Austin, TX 78701
Phone: (512) 457-2304
Fax: (512) 870-3420

Michael T. Sullivan
(admitted pro hac vice)
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL 60606
Phone:  (312) 782-0600
Fax:  (312) 706-8689

Southwestern Bell Telephone Company d/b/a AT&T Texas ("AT&T") and Time Warner Cable Texas LLC ("TWC") file this Joint Response to the April 20, 2015 letter from the Attorney General, on behalf of the Public Utility Commission of Texas ("Commission"), to the Clerk of this Court ("April 20 Letter"), which claims that this Court does not have jurisdiction over one of the issues on appeal. In particular, the Commission claims that its determination that Public Utility Regulatory Act ("PURA") § 54.204 automatically incorporates revisions to the Federal Communications Commission's ("FCC") Telecom Formula is an "advisory opinion" that CPS Energy ("CPS") does not have standing to appeal. Respectfully, the Commission is mistaken.

## BACKGROUND

PURA § 54.204 requires that CPS' maximum pole attachment rate be determined for each year through application of the FCC Telecom Formula adopted under 47 U.S.C. § 224(e). CPS' petition filed with the Commission sought an order (1) requiring AT&T and TWC to pay pole attachment fees it had calculated pursuant to PURA for certain years, and (2) finding "that the method used by CPS Energy to calculate its pole attachment fees is reasonable and consistent with the requirements of PURA."[1] In response to motions to dismiss, the Commission found that it did not have jurisdiction to compel payment of pole

---

[1] AR, Record Binder 1, Item 1 at 11 (Petition And Request For Enforcement Of CPS Energy).

1

attachment fees, and therefore the case proceeded solely as a declaratory judgment action. The Commission explained: "CPS Energy has standing to seek a declaratory order regarding the issue of whether its pole attachment rates comply with section 54.204 of PURA," and "may seek a declaratory order to clarify its obligations under section 54.204."[2]

During the course of the Commission proceeding, the FCC issued an order that revised the Telecom Formula effective June 8, 2011.[3] A dispute then arose between the parties over whether PURA § 54.204 requires such revisions to be automatically incorporated into PURA. At the parties' request, the Administrative Law Judge hearing the case certified the following issue to the Commission:

> Do the requirements of PURA § 54.204(c) incorporate revisions to the FCC's rules under 47 U.S.C. § 224(e) that are adopted subsequent to September 1, 2006, and if so, when do any such revisions become applicable to PURA § 54.204(c)?

The issue certified was a pure legal issue of statutory interpretation, and the parties' briefs on the issue focused solely on the plain language of PURA § 54.204,

---

[2] AR, Record Binder 1, Item 25 at 1, 5 (PUC Docket No. 36633, Doc. 25, *Order on Appeal of Order No. 3*, May 21, 2009).

[3] *In the Matter of Implementation of Section 224 of the Act, a National Broadband Plan for Our Future,* WC Docket No. 07-245, Report and Order and Order on Reconsideration, FCC 11-50 (rel. April 7, 2011).

legislative intent, and statutory construction.[4]  After careful consideration, the

Commission concluded:[5]

> The plain language of PURA § 54.204(c) indicates that the Legislature was aware that the FCC could possibly adopt new or modified rules under 47 U.S.C. § 224(e), and that it was the Legislature's clear intent that PURA § 54.204(c) incorporate these new or modified rules.  Additionally, nothing in the language of PURA § 54.204(c) expressly excludes revisions to the FCC's rules under 47 U.S.C. § 224(e), and reading PURA § 54.204(c) to exclude revisions to the FCC rules would thwart the intent of the Legislature.

*See also* AR, Binder 13, Item 530 at Conclusion of Law No. 26 (PFD) ("Changes

in 47 U.S.C. § 224(e) are incorporated into PURA § 54.204 without legislative

action.").[6]

---

[4] AT&T and TWC argued that the plain language of § 54.204 requires revisions to the FCC Telecom Formula to be automatically incorporated into PURA—specifically, they argued that the phrase "rules adopted by [the FCC]" plainly encompasses revisions to those rules.  AR, Binder 8, Item 391 at 3-5 (AT&T Texas' Brief on Certified Issues, filed June 6, 2011); *Id.*, Item 393 at 7-10 (TWC's Brief on Certified Issues, filed June 6, 2011).  AT&T and TWC also argued that under the rules of statutory construction reference to a statute applies to all revisions or amendments to that statute unless the statute expressly provides otherwise.  And because § 54.204 does not expressly provide otherwise, they argued that the Legislature intended revisions to the FCC Telecom Formula to be incorporated into PURA.  *Id.*  CPS also relied on the plain language of PURA.  But CPS argued that the absence of the phrase "as amended from time to time," or similar language, indicates the Legislature's intent that revisions would not be automatically incorporated into PURA and that the Telecom Formula would always be applied as it existed in 2005 when PURA was enacted.  *Id.*, Item 394 at 13 (CPS Brief on Certified Issues, filed June 6, 2011).

[5] AR, Binder 8, Item 402 at 2 (PUC Docket No. 36633, Doc. 753, *Order on Certified Issues*, June 24, 2011).

[6] AR, Binder 13, Item 530 at 8-9 (PFD) "The Commission also determined that any revisions to the FCC rules through FCC orders apply to MOUs under PURA § 54.204(c)."); *Id.* at Conclusion of Law No. 27 ("The FCC's June 8, 2011 amendment to 47 C.F.R. 1.1409(e) applies to CPS Energy under PURA § 54.204(c)."); *Id.* at Finding of Fact No. 31(d) ("The revisions to the FCC's rules under 47 U.S.C. § 224(e) adopted on June 8, 2011, are incorporated into PURA § 54.204(c).")

# ARGUMENT

The Commission's determination that PURA § 54.204 automatically incorporates any revisions to the FCC Telecom Formula was a declaratory judgment, not an "advisory opinion," and the Court has jurisdiction over CPS' appeal of that issue.

A declaratory judgment "is a remedial measure that determines the rights of the parties and affords relief from uncertainty with respect to rights, status, and legal relations." *Halliburton Energy Serv., Inc. v. Axis Tech., LLC,* 444 S.W.3d 251, 262 (Tex. App.—Dallas 2014, no pet.). Declaratory judgment actions "determine the rights of the parties when a controversy has arisen, before any wrong has actually been committed, and are preventative in nature." *Bexar Metropolitan Water Dist. v. City of Bulverde,* 156 S.W.3d 79, 88 (Tex. App.—Austin 2005, pet. denied). A declaratory judgment is appropriate if a "justiciable controversy exists as to the rights and status of the parties" and the controversy "will be resolved by the declaration sought." *Juliff Gardens, L.L.C. v. Tex. Comm'n on Envtl. Quality,* 131 S.W.3d 271, 277 (Tex. App.—Austin 2004, no pet.).

Here, a controversy arose over the correct interpretation of a statute (PURA § 54.204) and the parties' rights under that statute. AT&T and TWC consistently have maintained that the language of PURA requires FCC revisions to the Telecom

Formula to be automatically incorporated into PURA. CPS' view has been that the language does not automatically incorporate revisions. The Commission, at the request of the parties, resolved that controversy by issuing a declaratory judgment interpreting the statute. It is well settled that a "[d]eclaratory judgment is an appropriate vehicle for clarifying a party's rights under a statute." *State v. Montgomery Cnty.,* 338 S.W.3d 49, 57-58 (Tex. App.—Beaumont 2011, pet. denied); *see also Metropolitan Water Dist.,* 156 S.W.3d at 88 (declaratory judgment "may be used to clarify the meaning of statutes"); *Brennan v. City of Willow Park,* 376 S.W.3d 910, 922 (Tex. App.—Fort Worth 2012, pet. denied) (the Declaratory Judgments Act "grants any litigant whose rights are affected by a statute the opportunity to obtain a declaration of those rights under the statute").[7]

The Commission, through the Attorney General, nevertheless claims that the Commission's determination is an "advisory opinion" because it purportedly is just a "statement[] about the future."[8] It made this claim for the first time in this Court on the eve of oral argument, notwithstanding that the Commission has already defended its *Order on Rehearing* on this issue before the trial court and fully briefed the issue before this Court. At no point before the April 20 Letter did the

---

[7] In this respect, the Commission's conclusion that CPS had the right to "seek a declaratory order to clarify its obligations under section 54.204" is spot on. AR, Record Binder 1, Item 25 at 1, 5 (PUC Docket No. 36633, Doc. 25, *Order on Appeal of Order No. 3*, May 21, 2009).

[8] April 20 Letter at p.1.

Commission ever suggest that its decision with respect to the meaning of PURA § 54.204 was an "advisory opinion." And it is not.

The Commission mischaracterizes both the nature of advisory opinions and the nature of the Commission's determination. An advisory opinion is one "advising what the law would be on a hypothetical set of facts." *Robinson v. Parker,* 353 S.W.3d 753, 756 (Tex. 2011). That is, an advisory opinion is one that depends on uncertain or contingent future events that may or may not occur. *R.R. Comm'n of Tex. v. Centerpoint Energy Res. Corp.,* Nos. 03–13–00533–CV, 03–13–00534–CV, 03–13–00535–CV, 2014 WL 4058727 *3 (Tex. App.—Austin Aug, 14, 2014, no pet.). The Commission's determination is not a statement about the future, does not depend on hypothetical or theoretical future events, and will not change regardless of any future facts. It is a pure legal determination about the meaning of disputed statutory language, which courts have unequivocally held is a proper subject for a declaratory judgment. *Montgomery Cnty.*, 338 S.W.3d at 57-58; *Metropolitan Water Dist.*, 156 S.W.3d at 88; *Brennan*, 376 S.W.3d at 922. One only needs to look at the briefs filed by the parties on the certified issue (which focused solely on the plain language of the statute, legislative intent, and statutory construction) to see that the relief requested was purely legal and did not depend on the development of future facts.[9] "When a party seeks only a pure legal

---

[9] Supra, n.4.

determination that is not contingent of the development of additional facts, the relief requested is not advisory." *Complaint of Chermac Energy Corp. Regarding Certain Qualifying Facilities Under PURPA,* 2010 WL 3524026 *4 (Tex. P.U.C. 2010).

In *Chermac,* the Commission reversed an Administrative Law Judge's determination that the relief sought by the complainant was not ripe and that a decision in the case would therefore be an advisory opinion. 2010 WL 3524026 *4. The Commission explained that the complainant asked the Commission "to determine, as a pure legal matter, the proper interpretation of Rule 25.242," and "specifically, whether the rule applies to purchases of energy from facilities located in Oklahoma." *Id.* The Commission further explained that "there is a current dispute involving the legal interpretation of the Rule," and "the dispute can easily be resolved by the Commission in a manner that will bind the parties and settle the controversy." *Id.* Such pure legal determination is "not contingent of the development of additional facts," and therefore is "not advisory." *Id.*

Similarly, in *City of Waco v. Texas Natural Resource Conservation Commission,* the City of Waco sought a declaratory judgment that section 122.4(i) of the Code of Federal Regulation (which had been incorporated into state law) prohibits the TNRCC from issuing permits until it complies with certain requirements. 83 S.W.3d 169, 175 (Tex. App.—Austin 2002, pet. denied). The

7

TNRCC argued that the City's claim sought an advisory opinion and that the agency's compliance with the statute could only be determined in the context of an application for a permit. *Id.* at 176. This Court rejected the TNRCC's argument, finding that "[t]he City's claim poses a purely legal question—the interpretation of section 122.4(i)—which will not benefit from the development of additional facts in connection with a specific permit application." *Id.* at 177. The Court further found "[t]here is a judiciable controversy between the parties regarding the effect of section 122.4(i) on the agency's permitting process," and "[a] declaration regarding the effect of section 122.4(i) will resolve this controversy." *Id.* at 178.

As in *Chermac* and *City of Waco*, the Commission decided a pure legal issue of statutory interpretation. The Commission's determination did not depend on the development of additional facts and fully resolved the controversy, and is therefore a declaratory judgment, not an advisory opinion.

The Commission now asserts that no controversy exists because the FCC revision that gave rise to the legal issue became effective on June 8, 2011, several months after the last year for which the Commission determined CPS' maximum allowable pole attachment rate (*i.e.,* test/bill year 2009/2010).[10] This new position ignores the scope of the Commission proceeding. While the Commission did apply the Telecom Formula to determine CPS' maximum pole attachment rate for

---

[10] April 20 Letter at 1.

certain years for which it had data (test/bill years 2004/2005 through 2009/2010) as requested by CPS, that does not mean there were no other controversies for the Commission to resolve. To the contrary, the parties agreed that the Commission should resolve the legal issue of whether PURA automatically incorporates revisions to the FCC Telecom Formula. In resolving that legal issue, the Commission did not apply the June 8, 2011 revision to hypothetical future facts.

The Commission's late-in-the-game suggestion that pole attachment rates after June 8, 2011 are not at issue is also factually wrong. The Commission issued its final order in February 2013—well after the June 8, 2011 revision. By that time, CPS had charged or was owed for pole attachments for years 2011 through 2013. And there was a live controversy between the parties over the rates during that time frame. Indeed, the parties presented arguments regarding how to calculate pole attachment rates starting June 8, 2011,[11] and Staff calculated and proposed a specific pole attachment rate of $5.08 to be charged starting June 8, 2011.[12] Although the Commission found that it could not calculate the final rate for years after test/bill year 2009/2010 because the data specific to those years necessary to calculate the maximum allowable pole attachment rate had not been introduced into evidence,[13] the Commission issued associated findings regarding

---

[11] AR, Binder 13, Item 530 at 121-123 (PFD).

[12] *Id.* at 123.

[13] *Id.* at 43, Finding of Fact No. 31(g), Ordering Paragraph No. 1.

the methodology to be used for those years, thus making it clear that amounts owed

after June 8, 2011 were at issue:

> The rate charge by CPS Energy may not exceed the maximum allowable pole attachment rate calculated by the Telecom Formula adjusted by 66 % after June 8, 2011.[14]

> Because this change became effective in the middle of the year, determining whether CPS has complied with PURA § 54.204(c) with respect to its 2011 pole attachment billings requires a "blended" approach to the calculating the maximum allowable pole attachment rate. For January 1 through June 7, 2011, multiply the maximum allowable rate [by] 158 (the number of days between January 1 and June 7). Do the same for June 8 through December 31, 2011, multiply the maximum allowable rate by 207 (the number of days between June 8 and December 31. Divide these two figures by 365 (the days of the year).[15]

By addressing in its February 2013 *Order on Rehearing* the methodology for rates

starting June 8, 2011, the Commission was not making a determination about a

future, hypothetical event, but was ruling on the methodology applicable for years

that had already come to pass, based on a change to the FCC Telecom Formula that

had already been adopted and become effective.[16]

The Commission also suggests that CPS does not have standing because it

was not aggrieved by the Commission's so-called advisory opinion. The standing

---

[14] *Id.* at Finding of Fact No. 86.

[15] *Id.* at Finding of Fact No. 87.

[16] Of course, even if the parties had not litigated issues regarding rates after June 8, 2011, and even if the Commission's order had been issued before June 8, 2011, the Commission still could have issued a declaratory judgment clarifying the parties' rights under PURA § 54.204 as explained in the text.

doctrine, however, "reflects … the prohibition against court-issued advisory opinions." *Thomas v. Cook,* 350 S.W.3d 382, 389 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). To have standing, a controversy must exist between the parties. *Id.* As explained above, there was a controversy between the parties regarding their rights under § 54.204, and the Commission resolved that controversy in a manner that bound the parties and settled the dispute. CPS therefore has standing to appeal that determination. Contrary to the Commission's claim, a party "seeking a declaratory judgment need not have incurred actual injury." *Bexar,* 156 S.W.3d at 88. A declaratory judgment is "intended to provide a means to determine, *before any wrong has actually occurred*, the right of parties when a controversy has arisen and is remedial in nature." *Chermac,* 2010 WL 3524026 at 4 (emphasis in original); *Bexar,* 156 S.W.3d at 88.[17] Likewise, courts can issue declaratory judgments construing statutes even "before the statute is violated" (*Bexar,* 156 S.W.3d at 88-89) and "whether or not further relief is or could be claimed" (*Brennan,* 376 S.W.3d at 922).

Finally, if the Court were to conclude that the Commission's determination is an advisory opinion, then the parties would have to re-litigate the same issue of statutory interpretation at the Commission (then likely on appeal). This dispute has

---

[17] The two decisions cited in the April 20 Letter are inapposite. Neither involved the use of a declaratory judgment to resolve a dispute about the interpretation of a statute, which courts have unequivocally held is permissible.

been ongoing since 2008, with the proceeding at the Commission spanning more than four years.  Any re-litigation of the issue would be a mirror image of what has already taken place: the parties would raise the same legal arguments regarding the plain language of PURA, legislative intent, and statutory construction.  There would be nothing new for the Commission to consider.  It is contrary to judicial economy to force an additional administrative proceeding simply to have the Commission reaffirm its current interpretation of PURA.

For these reasons, the Court should find that CPS has standing to appeal the Commission's determination that PURA automatically incorporates revisions to the Telecom Formula and that the Court has jurisdiction to review the issue.

May 8, 2015

Respectfully submitted,

/s/ Michael T. Sullivan
Michael T. Sullivan
(admitted pro hac vice)
Mayer Brown LLP
71 S. Wacker Drive
Chicago, IL  60606
Phone:  (312) 782-0600
Fax:  (312) 706-8689
msullivan@mayerbrown.com

Len G. Briley, Jr.
State Bar No. 00783723
AT&T Legal Department
1010 N. St. Mary's St., 14th Floor
San Antonio, Texas 78215
Phone:  (210) 351-4832
Fax: (210) 886-2127
len.briley@att.com

J. David Tate
Katherine C. Swaller
Thomas Ballo
AT&T Legal Department
816 Congress Avenue, Suite 1100
Austin, Texas 78701
Phone:  (512) 457-2304
Fax:  (512) 870-3420
jon.david.tate@att.com
katherine.swaller@att.com
thomas.ballo@att.com

*Attorneys for AT&T Texas*

/s/ Valerie P. Kirk
Valerie P. Kirk
State Bar No. 11516900
Melissa Lorber
State Bar No. 24032969
ENOCH KEVER PLLC
600 Congress Ave., Suite 2800
Austin, Texas 78701
Phone: (512) 615-1200
Fax: (512) 615-1198
vkirk@enochkever.com
mlorber@enochkever.com

John Davidson Thomas
J. Aaron George
SHEPPARD MULLIN RICHTER &
HAMPTON LLP
2099 Pennsylvania Ave. NW, Suite 100
Washington, DC 20006
Phone: (202) 747-1900
Fax: (202) 747-1901
dthomas@sheppardmullin.com
ageorge@sheppardmullin.com

*Attorneys for Time Warner Cable Texas LLC*

13

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was served electronically and/or by regular U.S. mail upon the following attorneys of record on this 8th day of May, 2015.

/s/ Len G. Briley, Jr.

**Counsel for Public Utility Commission of Texas:**

Douglas Fraser
Megan M. Neal
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-02548
Phone:  (512) 463-2012
Fax:  (512) 457-4610
douglas.fraser@texasattorneygeneral.gov
megan.neal@texasattorneygeneral.gov

**Counsel for CPS Energy:**

Curt D. Brockmann
CPS Energy
145 Navarro
P.O. Box 1771
San Antonio, TX 78296
Phone: (210) 353-5689
Fax: (210) 353-6832
cdbrockmann@cpsenergy.com

Alfred R. Herrera
HERRERA & BOYLE, PLLC
816 Congress Avenue, Suite 1250
Austin, TX 78701
Phone: (512) 474-1492
Fax:  (512) 474-2507
aherrera@herreraboylelaw.com