# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00557-CV

**Bexar Metropolitan Water District, Juan and Luann Rivara, and Joseph and Dawn Fiorino, Appellants**

**v.**

**City of San Antonio, acting by and through the San Antonio Water System, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT NO. D-1-GV-06-000053, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

Appellants Bexar Metropolitan Water District (BexarMet), Juan and Luann Rivara, and Joseph and Dawn Fiorino appeal a summary judgment in favor of the San Antonio Water System (SAWS). SAWS initially filed suit seeking a declaration that BexarMet is prohibited from expanding its political boundaries and service area past certain geographical limits described in BexarMet's enabling statute, as amended by Senate Bill 1494.[1] The Rivaras and the Fiorinos, individuals living outside BexarMet's original political boundaries but within BexarMet's service area, intervened in the lawsuit. BexarMet and the intervenors argued that the district court did not have jurisdiction over SAWS's claim. BexarMet and the intervenors also argued that even if the trial court did have jurisdiction, SB 1494 is unconstitutional under the conservation amendment to the

---

[1]  Act of June 18, 2003, 78th Leg., R.S., ch. 375, 2003 Tex. Gen. Laws 1593 (SB 1494).

Texas Constitution, found in article XVI, § 59. This provision requires the legislature to provide advance notice of any bill that will expand the boundaries of a water district or alter the district's taxing authority. Alternatively, BexarMet argued that if SB 1494 is constitutional, it does not limit BexarMet's authority to expand its service area or political boundaries.

The trial court granted summary judgment in favor of SAWS, rendering judgment that SB 1494 did not violate article XVI, § 59 of the Texas Constitution. Further, the trial court found that SB 1494 limits BexarMet's service territory and political boundaries to certain areas. BexarMet and the intervenors appeal that judgment.

Because we conclude (1) that SAWS has standing to bring this suit, (2) that the enactment of SB 1494 did not violate the Texas Constitution, and (3) that SB 1494 limits BexarMet's service territory and political boundaries, we affirm the district court's judgment.

## BACKGROUND

The present suit represents yet another installment in a seemingly endless litigation battle between BexarMet and other water districts in the surrounding area regarding the scope of BexarMet's service area. BexarMet is a political subdivision created by special act (the BexarMet Act)[2] in 1945 under article XVI, § 59 of the Texas Constitution. The BexarMet Act, as it was written in 1945, included a metes and bounds description of the political boundaries of the district. BexarMet Act, § 5, 1945 Tex. Gen. Laws at 494. Sections 6 and 6a authorized two annexation procedures by which BexarMet could expand its political boundaries, although BexarMet never took

---

[2] Act of May 1, 1945, 49th Leg., R.S., ch. 306, 1945 Tex. Gen. Laws 491.

advantage of either of these procedures. *Id*. §§ 6, 6a, 1945 Tex. Gen. Laws at 496-97. BexarMet's political boundaries were commonly understood to coincide with the area within the 1945 city limits of San Antonio.

Texas water districts, including BexarMet, have the authority to exercise any powers within "the terms of the statutes which authorized their creation, and they can exercise no authority that has not been clearly granted by the legislature." *Tri-City Fresh Water Supply Dist. No. 2 of Harris County v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940). The statutes creating Texas water districts "envision an orderly development of the State's natural resources . . . through the formation of definite districts with geographical boundaries where waters of the State will be conserved through primary utilization within the district." *Harris County Water Control & Improvement Dist. No. 58 v. City of Houston*, 357 S.W.2d 789, 796 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.). When BexarMet was created in 1945, it was given the authority of a "governmental agency, a body politic and corporate, and a municipal corporation." BexarMet Act, § 2, 1945 Tex. Gen. Laws at 492.

BexarMet provided water service strictly to southern Bexar County until the 1990s, when it began expanding its service territory to include portions of Atascosa, Comal, and Medina counties, as well as additional portions of Bexar County. BexarMet accomplished this expansion by acquiring certificates of convenience and necessity (CCNs) from the Texas Commission on Environmental Quality (TCEQ)[3] authorizing the provision of retail water utility services.

---

[3] For convenience, references to actions taken by TCEQ will also encompass actions taken by its predecessor, the Texas Natural Resource Conservation Commission.

3

While BexarMet expanded its service area through CCNs, its political boundaries did not change. The Texas Water Code allows the service area of a water district to expand beyond its political boundaries. *See* Tex. Water Code Ann. § 49.215(d) (West 2000) ("A district shall not be required to hold a certificate of convenience and necessity as a precondition for providing retail water or sewer service to any customer or service area, notwithstanding the fact that such customer or service area may be located either within or outside the boundaries of the district . . . .").

In 1996, BexarMet's provision of water service to customers outside its political boundaries became the subject of a federal voting-rights lawsuit. *See Rios v. Bexar Metro. Water Dist.*, No. SA-96-CA-335 (W.D. Tex. Apr. 22, 1996). Rolando Rios challenged BexarMet's method of electing at-large board members, claiming that the method diluted minority voting rights because residents of BexarMet's political territory who were not BexarMet customers were able to vote in the elections, while BexarMet customers living outside BexarMet's political territory were not. The parties settled and submitted a proposed consent decree. The court adopted the consent decree and ordered that BexarMet's political boundaries must coincide with its retail water utility service areas as determined by the CCNs.

In 2003, the Texas legislature, with BexarMet's support,[4] amended the BexarMet Act by passing SB 1494. One of the changes made by SB 1494 was the addition of § 5A, which states:

---

[4] Chuck Bailey, an attorney representing BexarMet, testified before the House Natural Resources Committee regarding SB 1494, stating, "I have worked with the San Antonio Water System and the San Antonio River Authority, and with the GBRA, and I think we are all in agreement on this." Hearings on Tex. S.B. 1494 Before the House Comm. On Natural Res., 78th Leg., R.S. 1 (May 21, 2003) (statement of Chuck Bailey). The committee chairman also noted for the record that "Nancy Milleda wants to be shown 'for' the bill. She's also with Bexar Metropolitan Water District." *Id.* at 2 (statement of Chairman Puente).

(a)    The District's boundaries for purposes of the exercise of its powers and duties is [sic] defined in Section 5 of this Act.

(b)    In conformity with the court's judgment dated April 22, 1996, in Cause No. SA 96CA0335, *Rios v. Bexar Metropolitan Water District et al.*, in the United States District Court, Western District of Texas, and for the purpose of the exercise of its current retail water utility services, the District's boundaries shall include the territory defined in all or applicable portions of census tracts or property situated within any area certificated by the Texas Commission on Environmental Quality to the District on the date of passage of the Act adding this section pursuant to Certificates of Convenience and Necessity Nos. 10675, 12759, and 12760.

SB 1494, § 3, sec. 5A, 2003 Tex. Gen. Laws at 1596.

As noted above, § 5 of the BexarMet Act contains a metes and bounds description of BexarMet's political boundaries, commonly understood to coincide with the 1945 city limits of San Antonio. *See* BexarMet Act, § 5, 1945 Tex. Gen. Laws at 494.

SB 1494 also repealed §§ 6 and 6a of the BexarMet Act, the two unused provisions that allowed BexarMet to expand its territory through annexation. SB 1494, § 4, 2003 Tex. Gen. Laws at 1596. While SB 1494 included two grandfathering provisions that would allow any annexation procedures that were underway by a certain date to continue, no proceedings were underway by the relevant date to trigger the grandfathering provisions. *See id*. § 5, 2003 Tex. Gen. Laws at 1596.

Since SB 1494 was enacted, BexarMet and SAWS have sought to obtain CCNs for some of the same areas, which are located outside the boundaries in SB 1494. SAWS filed this suit challenging BexarMet's authority to apply for additional CCNs and TCEQ's authority to process the applications. BexarMet challenged the district court's jurisdiction on several grounds. The district court denied the plea to the jurisdiction and ruled on the merits of SAWS's claim, declaring that

5

(1) SB 1494 does not violate the Texas Constitution; (2) BexarMet cannot provide services outside its statutory boundaries; (3) BexarMet's statutory boundaries are limited to the 1945 city limits of San Antonio plus the geographic area covered by CCN numbers 10675, 12759, and 12760, as they existed on June 18, 2003; and (4) TCEQ has no authority to grant new or amended CCNs to BexarMet for territory beyond the statutory boundaries. BexarMet and the intervenors appeal this judgment.[5]

## DISCUSSION

BexarMet raises three issues on appeal, asserting (1) that the district court lacked jurisdiction over SAWS's claim, (2) that SB 1494 is void as unconstitutional, and (3) that even if SB 1494 is constitutional, it does not limit the authority of BexarMet to expand its current service area. Two of these issues have largely been resolved by prior decisions of this Court in similar litigation over BexarMet's service areas. The jurisdictional issue was addressed in *Bexar Metropolitan Water District v. City of Bulverde*, 156 S.W.3d 79, 86-89 (Tex. App.—Austin 2004, pet. denied) (referred to herein as *Bulverde I*). Whether SB 1494 limits BexarMet's ability to expand was recently examined by this Court in *Bexar Metropolitan Water District v. City of Bulverde*, No. 03-06-00447-CV (Tex. App.—Austin June 27, 2007, no pet. h.) (referred to herein as *Bulverde II*).

**Jurisdiction**

BexarMet argues that the trial court lacked jurisdiction over this case on three separate grounds. First, BexarMet contends that SAWS, as a mere competitor of BexarMet, lacked standing to pursue this action. Second, BexarMet argues that § 49.066 of the Texas Water Code bars

---

[5] TCEQ did not file an appeal.

6

SAWS's claims. Third, BexarMet claims that SAWS failed to establish standing under the federal voting-rights act to bring this action.

Whether a trial court has subject-matter jurisdiction is a question of law that we review de novo. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). We consider only the pleadings and evidence relevant to the question of jurisdiction and do not look to the merits of the case. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002). The plaintiff has the burden of alleging facts that affirmatively demonstrate that the trial court has jurisdiction to hear the case. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

BexarMet argues that SAWS lacks standing to bring this suit, based on the proposition that a competitor does not have standing to challenge a competing corporation's actions. *See, e.g.*, *English v. Landa Motor Lines*, 166 S.W.2d 721, 723 (Tex. Civ. App.—Austin 1942, writ ref'd w.o.m.). However, this Court has already resolved this issue in *Bulverde I*. *See* 156 S.W.3d at 88. In *Bulverde I*, this Court held that an "affected person" has standing to bring suit challenging a governmental authority's actions if the entity's "actions are void, as opposed to voidable." *Id*. (citing *City of Irving v. Callaway*, 363 S.W.2d 832, 834 (Tex. Civ. App.—Dallas 1962, writ ref'd n.r.e.)). SAWS sought a declaration that BexarMet is acting beyond its statutory powers as set forth in SB 1494. "If a water district acts beyond its statutory powers, its actions are void." *Id*. Therefore, SAWS has standing to bring this suit if it is an "affected person." This Court held in *Bulverde I* that an entity is considered an affected person if it is "seeking to provide water-utility services in the same area" as the governmental entity whose actions are being challenged. *Id*. Because SAWS alleged that BexarMet's actions are void and because SAWS, in seeking to provide water-utility

7

services in the same area as BexarMet, is an affected person, SAWS has standing to bring this suit for declaratory judgment.

Bulverde I also informs us in considering and rejecting BexarMet's claim that § 49.066(d) of the Texas Water Code prevents SAWS from bringing this suit. Subsection 49.066(d) states that "no suit may be instituted in any court of this state contesting . . . the validity of the creation and boundaries of a district created under this code." Tex. Water Code Ann. § 49.066(d) (West 2000). The exception to this rule is that such a suit may be "brought by the State of Texas through the attorney general." *Id.* § 49.066(e). In *Bulverde I*, this Court held that "[r]equesting a declaration regarding the location of a district's boundaries and the district's authority to provide service and expand its boundaries is not the same as challenging the validity of those boundaries. Such determinations are not prohibited by section 49.066." 156 S.W.3d at 88. Because SAWS's suit challenging BexarMet's authority to expand its boundaries falls within this category of determinations that are not prohibited by § 49.066 of the water code, we conclude that the trial court was not barred by the water code from reviewing SAWS's claim.

BexarMet's argument that SAWS does not have standing under the federal voting-rights act is also without merit. SAWS has not asserted a claim under the voting-rights act in this litigation. While the *Rios* litigation was based on the voting-rights act, SAWS's claim in this case centers around the statutory construction of the BexarMet Act, which was amended as a result of *Rios*. SAWS is not required to establish standing under the voting-rights act because it has not presented a claim under that statute.

Because we conclude that the trial court had jurisdiction over SAWS's claim, we overrule BexarMet's first issue.

8

**Constitutionality**

BexarMet argues that SB 1494 is unconstitutional under article XVI, § 59 of the Texas Constitution.[6]

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When both parties file motions for summary judgment, we determine all presented questions and render judgment. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). In order to prevail, a summary-judgment movant must prove that there is no genuine issue of material fact. *Id.*

In a constitutional challenge, "the courts should uphold a statute as valid unless it is clearly unconstitutional." *Koy v. Schneider*, 221 S.W. 880, 888 (Tex. 1920). Furthermore, "we must, if possible, construe statutes to avoid constitutional infirmities." *Nootsie, Ltd. v. Williamson County Appraisal Dist.*, 925 S.W.2d 659, 662 (Tex. 1996).

The Texas Constitution contains specific notice requirements for the "introduction of any bill amending a law creating or governing a particular conservation and reclamation district if such bill (1) adds additional land to the district [or] (2) alters the taxing authority of the district."

---

[6] As a threshold matter, SAWS argues that BexarMet does not have standing to challenge the constitutionality of SB 1494 because BexarMet was an active proponent of the legislation. SAWS points to *Barshop v. Medina County Underground Water Conservation District*, 925 S.W.2d 618, 628 (Tex. 1996), in which the court stated that "active involvement in the legislative process evidences the sufficiency of the notice." *Barshop* does not support this argument. The court in *Barshop* held that a party's involvement in the legislative process was evidence that *published notice* was sufficiently informative; it did not address whether a proponent of legislation is later precluded from bringing a constitutional challenge due to lack of notice. But regardless of whether BexarMet's legislative activities qualify as constructive notice of SB 1494, there is no evidence that the intervenors actively participated in the legislative process. As a result, the intervenors have standing, and we will address the claims presented.

Tex. Const. art. XVI, § 59(d).  Notice of the introduction of such a bill must be published in a newspaper of general circulation, and a copy of both the notice and bill must be delivered to the governor, among other requirements.  *Id*.[7]  All parties agree that these requirements were not met with respect to SB 1494.

BexarMet, now that SB 1494 has proven to be unfavorable to its interests, challenges the bill on constitutional grounds—despite having been an active proponent of SB 1494 during the legislative process.  BexarMet argues that SB 1494 is void because it was enacted in violation of article XVI, § 59.  SAWS contends that SB 1494 is not subject to the constitutional notice provisions because the bill did not "add additional land to the district" or "alter the taxing authority of the district."

*Did SB 1494 Add Additional Land to the District?*

---

[7]  The full text of article XVI, § 59(d) states:

No law creating a conservation and reclamation district shall be passed unless notice of the intention to introduce such a bill setting forth the general substance of the contemplated law shall have been published at least thirty (30) days and not more than ninety (90) days prior to the introduction thereof in a newspaper or newspapers having general circulation in the county or counties in which said district or any part thereof is or will be located and by delivering a copy of such notice and such bill to the Governor who shall submit such notice and bill to the Texas Water Commission, or its successor, which shall file its recommendation as to such bill with the Governor, Lieutenant Governor and Speaker of the House of Representatives within thirty (30) days from date notice was received by the Texas Water Commission. Such notice and copy of bill shall also be given of the introduction of any bill amending a law creating or governing a particular conservation and reclamation district if such bill (1) adds additional land to the district, (2) alters the taxing authority of the district, (3) alters the authority of the district with respect to the issuance of bonds, or (4) alters the qualifications or terms of office of the members of the governing body of the district.

Tex. Const. art. XVI, § 59(d).

10

The language of both the *Rios* judgment and SB 1494 suggests that SB 1494 was merely designed to reconcile the language of the BexarMet Act with the political boundaries set as a result of the *Rios* litigation. The *Rios* consent decree explicitly states that "the District's CCN areas served are hereby being made the Political Boundaries of the District." Section 5A of the BexarMet Act, as amended by § 3 of SB 1494, describes BexarMet's political boundaries, noting that this boundary description is "[i]n conformity with the court's judgment dated April 22, 1996, in Cause No. SA96CA0335, Rios v. Bexar Metropolitan Water District et al., in the United States District Court, Western District of Texas." SB 1494, § 3, sec. 5A, 2003 Tex. Gen. Laws at 1596.

Between the issuance of the *Rios* judgment and the enactment of SB 1494, BexarMet added additional land to its service area through the use of CCNs. The geographical area included in these CCNs became part of BexarMet's political boundaries pursuant to the *Rios* consent decree.[8] Because the *Rios* decree effectively expanded BexarMet's political territory prior to the passage of SB 1494, the bill could not have been the vehicle by which land was added to BexarMet's political territory. There was no land included in BexarMet's political boundaries after the passage of SB 1494 that was not within such boundaries immediately prior to the passage of SB 1494. As a result, SB 1494 was not subject to the notice requirements in article XVI, § 59 of the Texas Constitution for bills that "add additional land to the district."

---

[8] BexarMet argues that there is no evidence that its political territory expanded along with its service area when CCNs were granted or amended post-*Rios* but prior to the enactment of SB 1494. However, BexarMet would have had to wholly disregard the *Rios* judgment in order for its political territory not to expand along with its service area during this time period. We presume that BexarMet does not intend to make an argument that requires it to have disregarded a federal-court order.

11

The legislative history surrounding the passage of SB 1494 supports the view that BexarMet's political boundaries were redrawn when the *Rios* judgment was issued, rather than when SB 1494 was passed. Chuck Bailey, a legislative witness for BexarMet, testified before the Senate Natural Resources Committee on April 29, 2003, that SB 1494 was "basically a cleanup bill." Hearings on Tex. S.B. 1494 Before the Senate Comm. on Natural Res., 78th Leg., R.S. 2 (April 29, 2003) (statement of Chuck Bailey). Bailey also testified before the House Natural Resources Committee that SB 1494 brought BexarMet's boundaries "up to what they really are right now." Hearings on Tex. S.B. 1494 Before the House Comm. on Natural Res., 78th Leg., R.S. 1 (May 21, 2003) (statement of Chuck Bailey).

BexarMet argues that the *Rios* court could not have added territory to BexarMet's political boundaries because a federal court has no power under the voting-rights act to force a district to increase its boundaries. *See Burton v. City of Belle Glade*, 966 F. Supp. 1178, 1185-86 (S.D. Fla. 1997). However, the *Rios* judgment did not serve as the type of forced annexation discussed in *Burton*.[9] The *Rios* judgment, to which BexarMet consented, merely required BexarMet's political boundaries to match its service area. BexarMet was free to limit its service area to its political boundaries at the time, the area coinciding with the 1945 city limits of San Antonio. However, because BexarMet chose to continue providing service to areas outside those limits, the *Rios* court required BexarMet's political boundaries to be expanded to include such areas.

---

[9] On appeal, the trial court's judgment in *Burton* was reversed in part and affirmed in part, and the court noted that while forced annexation was an inappropriate remedy based on the facts of the case, it was not suggesting that "a federal court would never have the power to order annexation." *Burton v. City of Bell Glade*, 178 F.3d 1175, 1200 (11th Cir. 1999).

Furthermore, BexarMet may not use the state courts for a collateral attack on the *Rios* judgment. The full faith and credit clause of the United States Constitution[10] requires that federal court orders be enforced by Texas courts. *Keene Corp. v. Caldwell*, 840 S.W.2d 715, 720 (Tex. App.—Houston [14th Dist.] 1992, no pet). The Supreme Court has explained that "where the judgment or decree of the Federal court determines a right under a Federal statute, that decision is 'final until reversed in an appellate court, or modified or set aside in the court of its rendition.'" *Stoll v. Gottlieb*, 305 U.S. 165, 170 (1938) (quoting *Deposit Bank v. Frankfort*, 191 U.S. 499, 520 (1903)). This principle also extends to federal consent decrees. *See National R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 342 F.3d 242, 259 (3d Cir. 2003) (holding that a federal consent decree is a final federal-court judgment that may not be collaterally attacked by a state court). To the extent that BexarMet argues that the *Rios* order, to which it consented, could not lawfully cause BexarMet's political boundaries to expand, it makes an impermissible collateral attack on a federal judgment in state court.

The doctrine of quasi-estoppel further prevents BexarMet from arguing that the *Rios* order did not serve to add additional land to BexarMet's political territory. Not only did BexarMet consent to the decree, but it also reaped the benefits of the *Rios* order by extending its political boundaries along with its service area in the years between the *Rios* order and SB 1494. Quasi-estoppel precludes a party from asserting a position in litigation, to another's disadvantage, that is inconsistent with a position from which that party previously benefitted. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 864 (Tex. 2000). A party that benefits from a position that it has

---

[10]   U.S. Const. art. IV, § 1.

13

taken in a consent decree is similarly estopped from later asserting an inconsistent position. *See New Hampshire v. Maine*, 532 U.S. 742, 755 (2001). BexarMet, after consenting to the *Rios* judgment and enlarging its political boundaries as a result, may not now assert that the *Rios* judgment had no effect on BexarMet's political boundaries.

*Did SB 1494 Alter the Taxing Authority of the District?*

Like the addition of land to BexarMet's political territory, the expansion of BexarMet's taxing authority was a natural consequence of the *Rios* litigation. Had BexarMet chosen, post-*Rios*, to forego the provision of water services to the areas covered by the CCNs, its taxing authority would not have changed. However, because BexarMet continued providing water service to the areas covered by the CCNs and because the *Rios* consent decree required that such areas be included in BexarMet's political territory, BexarMet's taxing authority automatically extended to those areas.

Section 11 of the BexarMet Act authorizes BexarMet to levy, assess, and collect taxes "upon a favorable majority vote of the qualified property taxpaying electors voting at an election held for the purpose." BexarMet Act, § 11, 1945 Tex. Gen. Laws at 499. While the *Rios* judgment, as noted in a 2006 clarifying order, "did not alter, amend or in any manner extend the taxing authority of BexarMet" because "[o]nly the Texas Legislature has the authority" to do so, the *Rios* judgment did require that residents of BexarMet's service areas be afforded equal voting rights with those living inside BexarMet's pre-*Rios* political boundaries, pursuant to § 2 of the federal voting-rights act. The Texas Legislature, through § 11 of the BexarMet Act, gave BexarMet taxing authority over voters in the district, a group that necessarily included all residents of BexarMet's service territory

14

after *Rios*. The effect of § 11 is that BexarMet's taxing authority is tied to the ability to vote. The *Rios* judgment may not have specifically altered BexarMet's taxing authority, but it created a situation in which taxing authority was automatically extended pursuant to § 11 of the BexarMet Act.

BexarMet itself concedes that residents of its political territory are necessarily subject to taxing authority, stating in its motion for partial summary judgment, "The political boundaries of a district are those areas . . . where the residents can vote in district elections [and] are subject to the district's taxing authority . . . ." When BexarMet's political boundaries were expanded as a result of *Rios*, the expansion of its taxing authority followed. Because BexarMet's taxing authority was altered prior to the enactment of SB 1494 and there was no further change in BexarMet's taxing authority as a result of SB 1494, the constitutional notice requirements for bills that "alter the taxing authority of the district" were not triggered.

We conclude that SB 1494 did not add additional land to BexarMet's political territory or alter its taxing authority. As a result, SB 1494 was not subject to the notice provisions of article XVI, § 59 of the Texas Constitution. We overrule BexarMet's second issue.

**BexarMet's Authority to Expand**

BexarMet argues that if SB 1494 is constitutional, it does not limit BexarMet's authority to expand its service area or political boundaries. The trial court granted summary judgment in favor of SAWS, declaring that § 3 of SB 1494, in adding § 5A to the BexarMet Act, limited BexarMet's service territory and political boundaries to the 1945 city limits of San Antonio plus the geographic areas covered by CCN numbers 10675, 12759, and 12760 as of the enactment

15

of SB 1494.  Consistent with the holding of *Bulverde II*, we conclude that BexarMet's service territory and political boundaries are limited by SB 1494.

The declarations requested by the parties in this case rest on a matter of statutory construction.  We review matters of statutory construction de novo.  *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 25 (Tex. 2003).  In construing a statute, our objective is to determine and give effect to the legislature's intent.  *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002).  "If a statute's meaning is unambiguous, we generally interpret the statute according to its plain meaning."  *Id*.  In determining legislative intent, we look at the entire act as a whole, rather than isolated portions.  *Id*.

Prior to SB 1494, the BexarMet Act stated that BexarMet had the power, "[t]hrough every practical and legal means to control and regulate and to coordinate the control and regulation of the waters of the watershed of the San Antonio River and tributaries in the District and the storm and flood and underground waters of the District."  BexarMet Act, § 3(a), 1945 Tex. Gen. Laws at 492.  SB 1494 amended this language to give BexarMet the power, "[t]hrough every practical and legal means to develop, transport, deliver, distribute, store and treat water *for use within the District*, including the storm and flood waters *within* the District."  SB 1494, § 2, sec. 3(a), 2003 Tex. Gen. Laws at 1594 (emphases added).  As we noted in *Bulverde I*, "Some water-district enabling acts provide that water districts may sell or distribute water only *within* their boundaries.  Other enabling acts allow a water district to distribute or sell water *within* or *without* the district's boundaries."  156 S.W.3d at 83 (citations omitted).

In a 1947 opinion, the Texas Attorney General concluded that a water district was not authorized to sell water outside its boundaries if its enabling statute used language limiting the scope

16

of its authority to areas within the district. Op. Tex. Att'y Gen. No. V-319 (1947). In other words, "the statutes do not authorize [a] District to roam at large throughout the State and distribute water wherever it wishes without regard to limitations placed on it by statute." *Harris County Water Control & Improvement Dist. No. 58*, 357 S.W.2d at 795. Furthermore, we must presume that the legislature would not perform a meaningless or useless act, which means that the inclusion of the word "within" in BexarMet's enabling statute must be viewed as significant. *See Webb County Appraisal Dist. v. New Laredo Hotel, Inc.*, 792 S.W.2d 952, 954 (Tex. 1990); *see also* Tex. Gov't Code Ann. § 311.021 (West 2005). In light of the legislature's use of the phrase "within the District," rather than "within or without the District," a phrase that the legislature has seen fit to include in the enabling statutes of other water districts, we conclude that SB 1494 was intended to limit BexarMet's political boundaries and service area to the geographical area described in § 5A of the BexarMet Act, as amended by SB 1494.

As this Court noted in *Bulverde II*, the legislative history of SB 1494 supports this conclusion. The introduced version of SB 1494 authorized BexarMet "to develop, transport, deliver, distribute, store and treat water including the storm and flood waters *within or without* the District . . . ." Tex. S.B. 1494, 78th Leg., R.S. (2003) (introduced version) (emphasis added). This language was amended, however, to "for use within the District," rather than "within or without the District."

BexarMet argues that the Texas Water Code authorizes BexarMet to expand its service area, even after the enactment of SB 1494. Section 49.211 of the water code authorizes a water district to "purchase, construct, acquire, own, operate . . . or extend *inside and outside its boundaries* any and all land, works, improvements, facilities, plants, equipment, and appliances

17

necessary to accomplish the purposes of its creation or the purposes authorized by this code or any other law." Tex. Water Code Ann. § 49.211(b) (West Supp. 2006) (emphasis added). Similarly, § 49.215 of the water code authorizes a district to "purchase, construct, acquire, own, operate, repair, improve, or extend all works, improvements, facilities, plants, equipment, and appliances necessary to provide any services or facilities authorized to be provided by the district to areas *contiguous to or in the vicinity of the district*." *Id.* § 49.215(a) (West 2000) (emphasis added). BexarMet's position is that these statutes authorize BexarMet to continue serving areas outside of its boundaries, despite the language of SB 1494. In keeping with our decision in *Bulverde II*, we disagree.

Section 49.002 of the water code states that the provisions of chapter 49, including the provisions on which BexarMet relies, apply only "to the extent that the provisions of this chapter do not directly conflict with a provision in any other chapter of this code or any Act creating or affecting a special law district." *Id.* § 49.002(a) (West 2000). As amended by SB 1494, the BexarMet Act, which qualifies as an act creating a special law district, directly conflicts with §§ 49.215 and 49.211 of the water code. BexarMet argues that these provisions do not conflict, claiming that SB 1494 merely defines BexarMet's political boundaries and adds territory that was not included in the original statute. This argument ignores the language added to the BexarMet Act by SB 1494 that restricts BexarMet to delivering and distributing water "within" the district, as discussed above. This restriction creates a direct conflict between the BexarMet Act and §§ 49.215 and 49.211 of the water code, which authorize the provision of water services outside a district's political boundaries. As a result, BexarMet may not take advantage of these provisions in order to provide water service outside of its political boundaries.

18

As we stated in *Bulverde II*, further evidence that SB 1494 was intended to restrict BexarMet's political boundaries and service area can be found in the fact that SB 1494 eliminated §§ 6 and 6a of the BexarMet Act, which provided procedures for BexarMet to acquire additional territory through annexation. SB 1494, § 4, 2003 Tex. Gen. Laws at 1596. BexarMet argues that these provisions were deleted merely because they were redundant and unnecessary. However, SB 1494 included grandfathering provisions to allow any annexation procedures that were underway under § 6 or 6a by June 18, 2003 to continue.[11] *Id*. § 5, 2003 Tex. Gen. Laws at 1596. Had §§ 6 and 6a truly been redundant and unnecessary, there would be no need to include these grandfathering provisions. As noted above, we must presume that the legislature would not perform a meaningless or useless act. *See Webb County Appraisal Dist.*, 792 S.W.2d at 954; *see also* Tex. Gov't Code Ann. § 311.021. The repeal of BexarMet's annexation procedures and the inclusion of grandfathering provisions point to the conclusion that BexarMet's political boundaries and service area are meant to be restricted by SB 1494.

In light of the legislature's restriction of BexarMet's water service to areas "within the District," the legislative history indicating that the phrase "within and without" was considered and subsequently abandoned, and the repeal of the only procedures for expansion available under the BexarMet Act, we conclude, as we did in *Bulverde II*, that BexarMet's political boundaries and service area are restricted to the geographic area described in § 5A of the BexarMet Act, as amended by § 3 of SB 1494. If BexarMet wishes to expand its boundaries in the future, it will have to address

---

[11] BexarMet did not trigger either of these grandfathering provisions.

such matters with the legislature. The statute as it stands does not allow for expansion. We overrule BexarMet's third issue.

## CONCLUSION

Because we conclude that the trial court had jurisdiction over SAWS's claim, that SB 1494 is not void as unconstitutional, and that BexarMet is limited to the service territory and political boundaries described in § 5A of its enabling statute, we affirm the trial court's judgment.

_____

Diane Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson

Affirmed

Filed:   June 29, 2007