

# KEN PAXTON
### ATTORNEY GENERAL OF TEXAS

October 17, 2017

The Honorable Lyle Larson
Chair, Committee on Natural Resources
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0169

Re: Whether a municipal utility district may use its surplus funds to repair or replace cluster-type mailbox facilities that serve residences in the district (RQ-0160-KP)

Dear Representative Larson:

You tell us that residents of single-family dwellings in Wells Branch Municipal Utility District (the "District") receive mail in cluster-type mailbox receptacles installed by developers.[1] Attachment at 1. You relay that District residents "recently reported incidents of vandalism to, and mail and package theft from, the cluster mailbox units" and want the District to replace them "with something more secure."[2] *Id.* at 2. You question whether "a municipal utility district operating under Chapters 49 and 54, Water Code, [is] authorized by Texas law to use its surplus funds," which include property tax and utility service revenue, "to repair or replace cluster-type mailbox facilities." Request Letter at 1.

Water districts operate for the purpose of protecting and preserving the natural resources of the State. The authority and purpose of a municipal utility district, like other water districts, stem from article XVI, section 59 of the Texas Constitution, which requires the Legislature to "pass all such laws as may be appropriate" for the following purposes:

> The conservation and development of all of the natural resources of this State, and development of parks and recreational facilities, including the control, storing, preservation and distribution of its storm and flood waters, the waters of its rivers and streams, for irrigation, power and all other useful purposes, the reclamation and irrigation of its arid, semi-arid and other lands needing irrigation, the reclamation and drainage of its overflowed lands, and other lands needing drainage, the conservation and development of its forests, water and hydro-electric power, the navigation of its inland

---

[1]*See* Letter and Attachment from Honorable Lyle Larson, Chair, Comm. on Nat. Res., Tex. House of Representatives, to Honorable Ken Paxton, Tex. Att'y Gen. (Apr. 7, 2017), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter" and "Attachment," respectively).

[2]Residents have also noted that the cluster mailbox units do not appear homogenous and suggest that replacing them with color-uniform units could increase property values in the District. *See* Attachment at 2.

and coastal waters, and the preservation and conservation of all such
natural resources of the State . . . .

TEX. CONST. art. XVI, § 59; *see also Monsanto Co. v. Cornerstones Mun. Util. Dist.*, 865 S.W.2d. 937, 940 n.4 (Tex. 1993) (noting that municipal utility districts are created pursuant to article XVI, section 59 of the Texas Constitution). Consistent with this constitutional provision, the Legislature authorized the creation of municipal utility districts for the following purposes:

(1) the control, storage, preservation, and distribution of its storm water and floodwater, the water of its rivers and streams for irrigation, power, and all other useful purposes;

(2) the reclamation and irrigation of its arid, semiarid, and other land needing irrigation;

(3) the reclamation and drainage of its overflowed land and other land needing drainage;

(4) the conservation and development of its forests, water, and hydroelectric power;

(5) the navigation of its inland and coastal water;

(6) the control, abatement, and change of any shortage or harmful excess of water;

(7) the protection, preservation, and restoration of the purity and sanitary condition of water within the state; and

(8) the preservation of all natural resources of the state.

TEX. WATER CODE § 54.012.

Water districts in Texas, including municipal utility districts, may "exercise any powers within 'the terms of the statutes which authorized their creation, and they can exercise no authority that has not been clearly granted by the legislature.'" *Bexar Metro. Water Dist. v. City of San Antonio*, 228 S.W.3d 887, 890 (Tex. App.—Austin 2007, no pet.) (quoting *Tri-City Fresh Water Supply Dist. v. Mann*, 142 S.W.2d 945, 948 (Tex. 1940)). Subsection 54.201(a) of the Water Code broadly vests a municipal utility district with "the functions, powers, authority, rights, and duties which will permit accomplishment of the purposes for which it was created." TEX. WATER CODE § 54.201(a). Other provisions of the Water Code specify particular powers. For example, subsection 54.201(b) of the Water Code authorizes a municipal utility district "to purchase, construct, acquire, own, operate, maintain, repair, improve, or extend . . . any and all works, improvements, facilities, plants, equipment, and appliances necessary to accomplish" authorized purposes of the district, including any that are "incident, helpful, or necessary" to engage in the following specifically enumerated powers:

(1) supply water for municipal uses, domestic uses, power, and commercial purposes and all other beneficial uses or controls;

(2) collect, transport, process, dispose of, and control all domestic, industrial, or communal wastes whether in fluid, solid, or composite state;

(3) gather, conduct, divert, and control local storm water or other local harmful excesses of water in a district;

(4) irrigate the land in a district;

(5) alter land elevation in a district where it is needed;

(6) navigate coastal and inland waters of the district; and

(7) provide parks and recreational facilities for the inhabitants in the district, subject to the provisions of Chapter 49.

*Id.* § 54.201(b). Additionally, subsection 54.236(a) allows a municipal utility district to "purchase, install, operate, and maintain street lighting or security lighting within public utility easements or public rights-of-way or property owned by the district." *Id.* § 54.236(a). Certain municipal utility districts may also "repair or maintain a street within the district." *Id.* § 54.242.

However, we find no direct statutory or constitutional authorization to repair or replace mailbox facilities, nor have you identified how such repair or replacement would permit the broader accomplishment of one of the purposes for which the District was created.[3] Without such authorization, the District may not use its surplus funds to repair or replace cluster-type mailbox facilities that serve residences in the District. *See* Tex. Att'y Gen. Op. No. JM-1173 (1990) at 1 (noting that a "municipal utility district can exercise no authority that has not been clearly granted by the Legislature").

---

[3]Because we find no source of authority for the repair or replacement of mailbox facilities, we do not address the distinction in the District's surplus funds between tax revenue and utility service revenue with regard to any constitutional spending implications that may exist. *See* Tex. Att'y Gen. Op. Nos. JM-1173 (1990) at 7–8 (concluding that a municipal utility district could not use tax funds to purchase real property for the independent purpose of having it used as a public park because it served no constitutional purpose); JM-1259 (1990) at 3, 5 (stating that the conclusion of JM-1173 "is confined to the use of tax monies" and noting that when the Legislature grants a water district authority not subject to the constitutional limitations on taxing or incurring debt, the authority "need not" further a constitutional purpose to be valid).

## S U M M A R Y

The Wells Branch Municipal Utility District may not use its surplus funds to repair or replace cluster-type mailbox facilities that serve residences in the District.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee